**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

DISABILITY RIGHTS NEW YORK

                Plaintiff,

-against-

NEW YORK STATE, UNIFIED COURT SYSTEM OF
THE STATE OF NEW YORK, Honorable JANET
DIFIORE, as Chief Judge of the New York State Unified
Court System, Honorable LAWRENCE K. MARKS, as
Chief Administrative Judge of the New York State
Unified Court System.

                Defendants.

COMPLAINT

CV:

## PRELIMINARY STATEMENT

1.      For decades, individuals with intellectual and developmental disabilities have been deprived of their constitutional rights and discriminated against because of their disabilities by New York State's Unified Court System through the appointment of plenary guardians pursuant to Article 17A of the Surrogate Court Procedure Act (Article 17A).

2.      Through the application of Article 17A, defendants permit the termination of all decision making rights including, the right to decide where to live, whom to associate with, what medical treatment to seek and receive, whether to marry and have children, whether to vote, and where to work.

3.      DRNY brings this action to defend the rights guaranteed by the United States Constitution, the Americans with Disabilities Act and Section 504 of the Rehabilitation Act of 1973 for New Yorkers with intellectual disabilities and developmental disabilities.

## JURISDICTION AND VENUE

4.       This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §

1331.

5.       Plaintiff brings this civil rights action under the United States Constitution and 42 U.S.C.

§ 1983 to challenge the constitutionality of Article 17A of the Surrogates Court Procedure Act.

6.       Plaintiff's additional federal claims are made pursuant to 42 U.S.C. § 1983, Section 504 of

the Rehabilitation Act of 1973, 29 U.S.C. § 794; and Title II of the Americans with Disabilities Act 42

U.S.C. § 12132.

7.       This Court has the authority to grant declaratory and injunctive relief under 28 U.S.C §§

2201, 2202.

8.       Venue is appropriate in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2).

## PARTIES

### Plaintiff

9.       DISABILITY ADVOCATES, INC. is an independent non-profit corporation organized

under the laws of the State of New York. It does business and has sued under the name DISABILITY

RIGHTS NEW YORK (DRNY).

10.       Under the Developmental Disabilities Assistance and Bill of Rights Act (DD Act),

Congress gives significant federal funding to states for services to individuals with disabilities, provided

that the state establishes a Protection and Advocacy (P&A) system that meets certain specified

conditions. 42 U.S.C. § 15041 *et seq*.

11.       DRNY is New York State's P&A system.  N.Y. Exec. Law § 558(b).

12.     DRNY is specifically authorized to pursue legal, administrative, and other appropriate remedies or approaches to ensure the protection of, and advocacy for, the rights of individuals with intellectual and developmental disabilities. 42 U.S.C. § 15043(a)(2)(A)(i).

13.     DRNY has offices located at 25 Chapel Street, Suite 1005, Brooklyn, NY 11201; 725 Broadway, Suite 450, Albany, NY 12208;  and, 44 Exchange Blvd, Suite 110, Rochester, NY 14614.

### Defendants

14.     New York State is a public entity as defined by 42 U.S.C § 12131(1)(A).

15.     New York State operates the Unified Court System of the State of New York.

16.     The Unified Court System of the State of New York is a program or activity pursuant to 29 U.S.C. § 794(b)(1)(A)

17.     The Unified Court System of the State of New York has all the powers and duties set forth in Article VI of the New York State Constitution and as otherwise prescribed by law, statute, rules and regulations.

18.     The Unified Court System of the State of New York has Surrogate Courts which have taken, and continue to take, action which plaintiff complains of in this lawsuit.

19.     The Unified Court System Office of Court Administration is located at 25 Beaver Street - Rm. 852 New York, NY 10004

20.     Janet DiFiore, is the Chief Judge of the State of New York, with all powers and duties set forth in Article VI of the New York State Constitution and as otherwise prescribed by law, statute, rules and regulations.

21.     Chief Judge DiFiore serves as the Chief Judicial Officer of the State and the Chief Judge of the Court of Appeals.

22.     The Chief Judge of the Unified Court System establishes statewide standards and administrative policies for the Unified Court System in the State of New York.

23.     Judge DiFiore is sued in her official capacity.

24.     While under Chief Judge DiFiore's control, Surrogate Courts have taken, and continue to take, action which plaintiff complains of in this lawsuit.

25.     Lawrence K. Marks, is the Chief Administrative Judge for the Courts of New York State, with all powers and duties set forth in Article VI of the New York State Constitution and as otherwise prescribed by law, statute, rules and regulations.

26.     Judge Marks is sued in his official capacity.

27.     While under Chief Administrative Judge Marks' control, Surrogate Courts have taken, and continue to take, action which plaintiff complains of in this lawsuit.

28.     Pursuant to the powers vested in the Chief Administrative Judge, on August 1, 2016 defendant Marks rescinded eight forms used in Surrogate's Court guardianship proceedings and prescribed eight new forms for use in Surrogate's Court guardianship proceedings in the courts of the State of New York.  See

http://www.nycourts.gov/courts/7jd/monroe/Surrogate/PDFs/SCPA_Changes_Petition.pdf

## FACTUAL ALLEGATIONS

29.     The imposition of a guardianship is a significant deprivation of personal liberty.

30.     In New York State, guardianship of individuals with intellectual disabilities and developmental disabilities may be sought pursuant to Article 17A or Mental Hygiene Law Article 81 (Article 81).

31.     A guardianship proceeding under Article 81 tailors any deprivation of rights to an individual's functional limitations rather than a diagnosis.

32.     Article 81 explicitly requires the court to impose the least restrictive form of intervention, taking into account community supports, resources and existing advance directives that render a guardianship unnecessary. See MHL § 81.02 (a) (2); 81.03 (e).

33.     By contrast, under Article 17A, the basis for appointing a guardian is diagnosis driven, that is, whether a person has an intellectual or developmental disability.

34.     Article 17A provides only for the appointment of a plenary guardianship of the person, property or person and property and it is not individually tailored to meet the individual's needs or provide the least restrictive level of guardianship.

### History of MHL Article 81 and SCPA Article 17A

35.     In 1990, the Legislature directed the New York State Law Revision Commission to study and re-evaluate Article 17A and committee and conservatorship proceedings under Mental Hygiene Law (MHL) Article 77 and 78 in light of "momentous changes [which] have occurred in the care, treatment, and understanding of individuals [with disabilities]…" L. 1990, ch. 516 § 1

36.     A study of Article 17A was conducted but not presented to the Legislature.

37.     Instead, the Law Revision Commission submitted a report to the Legislature only on MHL Article 77 and 78.

38.     Rejecting global adjudications of incapacity, the Legislature determined that New York's former conservatorship and committee laws, MHL Article 77 and 78, were not flexible enough to meet the diverse and complex needs of persons with disabilities that impact capacity.

39.     After the Law Revision Commission's study was completed, the Legislature found that, "Conservatorship which traditionally compromises a person's right only with respect to property frequently is insufficient to provide necessary relief. On the other hand, a committee, with its judicial finding of incompetence and the accompanying stigma and loss of civil rights, traditionally involves a

depravation that is often excessive and unnecessary. Moreover, certain persons require some form of assistance in meeting their personal and property management needs but do not require either of these drastic remedies." MHL § 81.01

40.      In response, the Legislature enacted MHL Article 81 in 1992 declaring, "it is the purpose of this act to promote the public welfare by establishing a guardianship system which is appropriate to satisfy either personal or property management needs of an incapacitated person in a manner tailored to the individual needs of that person, which takes in account the personal wishes, preferences and desires of the person, and which affords the person the greatest amount of independence and self-determination and participation in all the decisions affecting such person's life." MHL § 81.01

41.      Article 81 applies to all persons with disabilities which impact capacity.

42.      Article 81 does not distinguish between individuals with mental illness, intellectual disabilities, developmental disabilities, or any other disability.

43.      Instead, Article 81 requires courts to assess the alleged incapacitated person's "functional limitations which impair the person's ability to provide for personal needs or property management" regardless of the origin of the functional limitation. MHL § 81.02(c)

44.       In contrast, Article 17A, which was enacted in 1969, authorizes a Surrogate Judge to appoint a guardian over the person, property or person and property of a person with mental retardation.

45.       Article 17A was placed within Surrogate Court Procedures Act (SCPA) Article 17 which governs the appointment of a guardian over a minor child.

46.      The practice commentaries for Article 17A state "[t]he guardianship of a mentally retarded or developmentally disabled person is very much like the guardianship of a child…" SCPA § 1761.

47.      The term, "mental retardation" was replaced with "intellectual disability" in Article 17A in 2016. SCPA § 1750(2016).

48.    Under  Article 17A, a "person who is intellectually disabled is a person who has been certified by one licensed physician and one licensed psychologist, or by two licensed physicians at least one of whom is familiar with or has professional knowledge in the care and treatment of persons with an intellectual disability, having qualifications to make such certification, as being incapable to manage him or herself and/or his or her affairs by reason of intellectual disability and that such condition is permanent in nature or likely to continue indefinitely." SCPA § 1750.

49.    In 1986, Article 17A was expanded to include other "developmental disabilities." 1989 N.Y. Sess. Law 675 § 2 (McKinney).

50.    For the purposes of  Article 17A, "a person who is developmentally disabled is a person who has been certified by one licensed physician and one licensed psychologist, or by two licensed physicians at least one of whom is familiar with or has professional knowledge in the care and treatment of persons with developmental disabilities, having qualifications to make such certification, as having an impaired ability to understand and appreciate the nature and consequences of decisions which result in such person being incapable of managing himself or herself and/or his or her affairs by reason of developmental disability and that such condition is permanent in nature or likely to continue indefinitely, and whose disability: (a) is attributable to cerebral palsy, epilepsy, neurological impairment, autism or traumatic head injury; (b) is attributable to any other condition of a person found to be closely related to intellectual disability because such condition results in similar impairment of general intellectual functioning or adaptive behavior to that of persons with intellectual disabilities; or (c) is attributable to dyslexia resulting from a disability described in subdivision one or two of this section or from intellectual disability; and (d) originates before such person attains age twenty-two, provided, however, that no such age of origination shall apply for the purposes of this article to a person with traumatic head injury." SCPA § 1750-a.

51.     The practice commentary following MHL § 81.01 describes the significant distinctions

between Article 81 and Article 17A:

> Although the enactment of Article 81 has had a profound impact on guardianship law in New
> York, it has not effected any change in Article 17-A of the Surrogate's Court Procedure Act
> which governs guardianship for persons with mental retardation or developmental disabilities.
> Article 17-A is markedly different from Article 81. The proceeding can only be brought in
> Surrogate's court; it is limited to persons with mental retardation and developmental disabilities;
> the petition must be accompanied by certificates of one licensed physician and one licensed
> psychologist or two licensed physicians; the appointment can be made without a hearing or the
> presence of the person alleged to need a 17A guardian; and it does not provide the same due
> process protections, the limited or tailored authority of the guardian, nor the detailed
> accountability of the guardian as Article 81.

See Law Revision Commission Comment MHL § 81.01

52.     Unlike, Article 81, Article 17A does not require the court to make any findings of fact

with regard to the nature or extent of the powers requested by the petitioner, the allegedly incapacitated

person's functional abilities and limitations, alternatives to guardianship, or why it is necessary for a

guardian to be appointed.

53.     Defendants' Surrogate Judges use Article 17A to grant all-encompassing powers of

unlimited duration over the person and property of people with intellectual and developmental

disabilities.

54.     The appointment of a 17A guardianship limits the fundamental rights of individuals with

intellectual and developmental disabilities by removing a person's legal authority and control over their

decisions.

## New York State's Olmstead Cabinet and Article 17A

55.     In October 2013, New York State issued the Report and Recommendations of the Olmstead Cabinet pursuant to Executive Order Number 84. See http://www.governor.ny.gov/sites/governor.ny.gov/files/archive/assets/documents/olmstead-cabinet-report101013.pdf

56.     New York's Olmstead Cabinet concluded that "[u]nder Article 17A, the basis for appointing a guardian is diagnosis driven and is not based upon the functional capacity of the person with disability." Id at 28

57.     In contrast, MHL Article 81, "imposes guardianship based upon a functional analysis of a person's disability…" Id.

58.     To meet the State's responsibility under the American with Disabilities Act, the Olmstead Cabinet recommended that Article 17A be amended to include an examination of functional capacity and consideration of choice and preference in decision making. Id.

59.     As of the filing of this action, Article 17A has not been so amended.

## Procedural and Substantive Standards for the Appointment of a Guardian

### The Petition

60.     The pleading requirements of Article 17A and Article 81 differ dramatically.

61.     Article 81 requires the petition to include, "a description of the alleged incapacitated person's functional level including that person's ability to manage the activities of daily living, behavior, and understanding and appreciation of the nature and consequences of any inability to manage the activities of daily living." MHL § 81.08(3)

62.     Article 81 also requires the petition to include, "specific factual allegations as to the personal actions or other actual occurrences involving the person alleged to be incapacitated which are

claimed to demonstrate that the person is likely to suffer harm because he or she cannot adequately understand and appreciate the nature and consequences of his or her inability to provide for personal needs." MHL § 81.08(4)

63.     Article 81 further requires the petition to include, "specific factual allegations as to the financial transactions or other actual occurrences involving the person alleged to be incapacitated which are claimed to demonstrate that the person is likely to suffer harm because he or she cannot adequately understand and appreciate the nature and consequences of his or her inability to provide for property management." MHL § 81.08(5)

64.     Additionally, Article 81 requires the petition to include, "the particular powers being sought and their relationship to the functional level and needs of the person alleged to be incapacitated." MHL § 81.08(6).

65.     In contrast, Article 17A does not require any specific factual allegations about the person's ability to understand the nature and consequences of his or her ability to provide for personal needs or property management.

66.     Instead, Article 17A requires that the petition be filed with the court on forms prescribed by the defendants. SCPA § 1752

67.     Defendant Marks has issued these forms. See https://www.nycourts.gov/forms/surrogates/guardianship.shtml.

68.     The defendants' forms require a petitioner to submit certifications of two physicians or one licensed psychologist and one physician with the petition. Id.

69.     The physician or psychologist must opine whether the person is incapable of managing himself or herself and/or his or her affairs by reason of an intellectual or developmental disability and whether such condition is permanent in nature or likely to continue indefinitely. Id.

70.     The defendants' forms allow the physician or psychologist to check boxes regarding these fundamental conclusions. Id.

71.     The physician or psychologist are not directed to describe in detail how the existence of an intellectual or developmental disability makes the person incapable of managing himself or herself or his or her affairs.

72.     Instead, the physician or psychologist must "describe, in detail, the nature, degree and origin of the disability." See http://www.nycourts.gov/courts/7jd/monroe/Surrogate/PDFs/SCPA_Changes_Petition.pdf

73.     The defendants' forms specifically permit the courts' use of uncontested affidavits which are attached to the petition.

74.     If the alleged incapacitated person is a minor, the physician or psychologist can provide this privileged information without the minor's knowledge or consent.

75.     Unlike Article 81, Article 17A does not require a petitioner to state the specific powers requested and the relationship between the powers sought and the individual's functional limitations. See and compare, SCPA §1752 and MHL §81.08.

76.     Unlike Article 81, Article 17A does not require a petitioner to state why the person would likely suffer harm if the court did not appoint a guardian. Id.

77.     The petition under Article 17A does not put an allegedly incapacitated person on actual notice of the reasons why the guardianship is sought, the extent of the powers sought, the right to contest the proceeding at a hearing, or to be represented by an attorney.

## <u>Notice</u>

78.     Article 81 requires a notice to the allegedly incapacitated person which includes a clear

and easily readable statement of the rights of the person in twelve point or larger bold face double spaced

type as follows:

### IMPORTANT

An application has been filed in court by _____ who believes you may be unable to take care of your personal needs or financial affairs. _____ is asking that someone be appointed to make decisions for you. With this paper is a copy of the application to the court showing why _____ believes you may be unable to take care of your personal needs or financial affairs. Before the court makes the appointment of someone to make decisions for you the court holds a hearing at which you are entitled to be present and to tell the judge if you do not want anyone appointed. This paper tells you when the court hearing will take place. If you do not appear in court, your rights may be seriously affected.

You have the right to demand a trial by jury. You must tell the court if you wish to have a trial by jury. If you do not tell the court, the hearing will be conducted without a jury. The name and address, and telephone number of the clerk of the court are:

The court has appointed a court evaluator to explain this proceeding to you and to investigate the claims made in the application. The court may give the court evaluator permission to inspect your medical, psychological, or psychiatric records. You have the right to tell the judge if you do not want the court evaluator to be given that permission. The court evaluator's name, address, and telephone number are:

You are entitled to have a lawyer of your choice represent you. If you want the court to appoint a lawyer to help you and represent you, the court will appoint a lawyer for you. You will be required to pay that lawyer unless you do not have the money to do so. MHL § 81.07.

79.     The Article 81 notice must inform the individual of the right to a hearing, to present

evidence, call witnesses, cross examine witnesses and be represented by counsel of his or her choice.

MHL § 81.07 and MHL § 81.11

80.     The Article 81 court must also appoints a person to explain "to the person alleged to be incapacitated, in a manner which the person can reasonably be expected to understand, the nature and possible consequences of the proceeding, the general powers and duties of a guardian, available resources, and the rights to which the person is entitled, including the right to counsel." MHL § 81.09

81.     Article 17A does not require that the individual with intellectual or developmental disabilities be notified of his or her rights to contest the appointment of a guardianship, be present at a hearing, or be represented by an attorney.

82.     Article 17A makes no provision to tailor notice requirements to ensure that the individual with intellectual or developmental disabilities is fully informed of the nature and implications of the proceeding.

### Necessity of Guardianship

83.     Since the appointment of a guardian results in a deprivation of fundamental rights, there must be a clear and compelling need for the appointment. See Rivers v. Katz, 67 N.Y.2d 485 (1986) *re-argument den.,* 68 N.Y.2d 808 (1986); Addington v. Texas, 441 U.S. 418 (1979).

84.     The presence of a particular medical or psychiatric condition does not necessarily preclude a person from functioning effectively. See In re Grinker (Rose), 77 N.Y.2d 703 (1991); Rivers v. Katz, 67 N.Y.2d 485 (1986).

85.     Under Article 81, a guardianship can only be imposed when:

    a.   The person is likely to suffer harm; and

    b.   The person is unable to provide for personal needs and/or property management; and

    c.   The person cannot adequately understand and appreciate the nature and consequences of such inability. MHL § 81.02(s)(b)(1)-(2).

86.     Even if the alleged incapacitated person is found to lack capacity, Article 81 mandates a showing of unmet needs before a guardian can be appointed. MHL §§ 81.02(a)(1) and (2); 81.03(d).

87.     Under Article 81, a guardian may be appointed only where it has been established by clear and convincing evidence that a guardian is needed and there are no lesser restrictive options. See MHL § 81.02; 81.03(d)(e).

88.     In contrast with Article 81, Article 17A specifically directs that where "the court is satisfied that the best interests of the person who is intellectually disabled or person who is developmentally disabled will be promoted by the appointment of a guardian of the person or property, or both, it shall make a decree naming such person or persons to serve as such guardians." SCPA § 1754(5).

89.     Surrogate Courts routinely terminate an individual's decision making authority in every aspect of life and deprive the individual of fundamental liberty interests simply because the court has determined it is in the person's "best interest" to do so.

## The Hearing and Presence of a Person Subject to Guardianship

90.     Article 17A directs the court to conduct a hearing but also permits the court, "in its discretion to dispense with a hearing for the appointment of a guardian" where the application has been made by (a) both parents or the survivor; or (b) one parent and the consent of the other parent; or (c) any interested party and the consent of each parent. SCPA § 1754 (1)(a)-(c).

91.     Indeed, SCPA § 1752 (7) and the forms promulgated by defendants direct the petitioner to identify "any circumstances which the court should consider in determining whether it is in the best interest of the [alleged incapacitated] person … to not be present at the hearing."

92.     The statutory standard for determining whether a person subjected to an Article 17A proceeding must be present are delineated in SCPA § 1754(3) which states:

If a hearing is conducted, the person who is intellectually disabled or person who is developmentally disabled shall be present unless it shall appear to the satisfaction of the court on the certification of the certifying physician that the person who is intellectually disabled or person who is developmentally disabled is medically incapable of being present to the extent that attendance is likely to result in physical harm to such person who is intellectually disabled or person who is developmentally disabled, or under such other circumstances which the court finds would not be in the best interest of the person who is intellectually disabled or person who is developmentally disabled.

93.     By contrast, Article 81 requires the court to conduct a hearing before the appointment of a guardianship; the hearing may be waived only if the alleged incapacitated person consents to the appointment of a guardian. MHL §§ 81.11, 81.02(a)(2).

94.     Under Article 81, "the hearing must be conducted in the presence of the person alleged to be incapacitated…so as to permit the court to obtain its own impression of the person's incapacity. If the person alleged to be incapacitated physically cannot come or be brought to the courthouse, the hearing must be conducted where the person alleged to be incapacitated resides unless…all information before the court clearly establishes that (i) the person alleged to be incapacitated is completely unable to participate in the hearing or (ii) no meaningful participation will result from the person's presence at the hearing." MHL § 81.11(c)

95.     The Law Revision Commission stressed the importance of having the person present at the hearing because "seeing the person allowed the court to draw a carefully crafted and nuanced order which takes into account the person's dignity, autonomy and abilities, because the judge has had the opportunity to learn more about the person as an individual rather than a case description in a report." The Law Revision Commission Comment MHL § 81.11.

## Evidentiary Standard For Appointment of Guardian

96.     Article 17A does not specifically set forth any evidentiary standards for the appointment of a guardian.

97.     Surrogate Courts apply the preponderance of the evidence standard in Article 17A proceedings.

98.     By contrast, MHL Article 81 expressly requires courts to apply a clear and convincing evidence standard of proof, with the burden of proof on the petitioner. MHL § 81.12(a)

## Right to Counsel

99.     Article 17A makes no provision for the appointment of an attorney to represent the alleged incapacitated person.

100.     Instead, Article 17A states that a court, "may in its discretion appoint a guardian ad litem, or the mental hygiene legal service if such person is a resident of a mental hygiene facility… to recommend whether the appointment of a guardian as proposed in the application is in the best interest of the person who is intellectually disabled or person who is developmentally disabled." SCPA § 1754(1).

101.     Article 81 requires the appointment of a court evaluator rather than a guardian ad litem. MHL § 81.09(a).

102.     The court evaluator has a duty to ensure the alleged incapacitated person understands petition and the nature and potential consequences of the proceeding. MHL § 81.09

103.     The court evaluator must also educate the person about their legal rights and assess whether legal counsel should be appointed. MHL §81.09

104.     In addition, the court evaluator is required to conduct a thorough investigation to aid the court in reaching a determination about the person's capacity, the availability and reliability of alternative

resources, and assigning the proper powers to the guardian, and selecting the guardian. MHL § 81.09 (a);
See also Law Revision Commission comment MHL § 81.10.

105.     The appointment of a court evaluator is mandatory in every case, with one exception. The
court may dispense with or suspend the appointment of the court evaluator only when the court appoints
counsel under MHL § 81.10.

106.     Article 81 also grants the alleged incapacitated person "the right to choose and engage
legal counsel of the person's choice." MHL § 81.10(a).

107.     MHL Article 81 requires the appointment of an attorney when the alleged incapacitated
person : (1) requests counsel; (2) wishes to contest the proceeding; (3) does not consent to the authority
requested in the petition; or when (4) the petition alleges the person is in need of major medical or dental
treatment; (4) is being transferred to a nursing home or other residential facility; or (5) where the court
determines that a possible conflict exists between the court evaluator's role and the advocacy needs of the
person alleged to be incapacitated. MHL § 81.10(c)

108.     In Article 81 proceedings, where the person is indigent, the state, or its appropriate
subdivision, is required to pay for assigned counsel. MHL § 81.10(f); See also Matter of St. Luke's-
Roosevelt Hosp. Ctr., 89 N.Y.2d 889, 892 (1996)

109.     The Law Revision Commission explained why the appointment of counsel is absolute,
and the difference between the appointment of a guardian ad litem and an attorney: "[i]n the past it often
has not been clear whether the guardians ad litem appointed pursuant to Article 77 and 78 were acting as
advocates for the person who was the subject of the proceeding or as a neutral "eyes and ears" of the
court. In order to alleviate the confusion, Article 81 distinguishes between the two roles of counsel and
that of guardian ad litem, now known as court evaluator, and creates separate rules to govern each…The
role of counsel…is to represent the person alleged to be incapacitated and ensure that the point of view of

the person alleged to be incapacitated is presented to the court. At minimum that representation should include conducting personal interviews with the person; explaining to the person his or her rights and counseling the person regarding the nature and consequences of the proceeding; securing and presenting evidence and testimony; providing vigorous cross-examination; and offering arguments to protect the rights of the allegedly incapacitated person." Law Revision Commission comment under MHL § 81.10(f)

### Powers of the Guardian: Plenary or Limited

110.     The defendants' Unified Court Administration's guidance on Article 17A states, "[a]n Article 17A Guardianship is very broad and covers most decisions that are usually made by a parent for a child such as financial and healthcare decisions."  See www.nycourts.gove/courthelp/Guardianship/17A.shtml.

111.     The defendants' guidance states that the Surrogate's Court can appoint a guardian of the person, the property or both person and property. Id.

112.     The defendants' guidance states that "a guardian of the person can make life decisions for the ward like health care, education and welfare decisions." Id.

113.     The defendants' guidance states that "a guardian of the property handles decisions about the ward's money, investments and savings." Id.

114.     The defendants' guidance states that a "guardian of the person and property has responsibility of both the ward's life decisions and the ward's property." Id.

115.     Under Article 17A there is no provision for a lesser restrictive option than the appointment of a plenary guardian of the person.

116.      Article 17A makes for provision for the Surrogate Court to limit or tailor the guardianship.

117.     By contrast, Article 81 requires the court to limit or tailor the guardianship to "the least restrictive form of intervention by appointing a guardian with powers limited to those which the court has found necessary to assist the incapacitated person in providing for personal needs and/or property management." MHL § 81.16(c)(2).

118.     The Legislature specifically declared that the purpose of Article 81 was to create a "guardianship system which is appropriate to satisfy either personal or property management needs of an incapacitated person in a manner tailored to the individuals needs of that person which…affords the person the greatest amount of independence and self-determination and participation in all the decisions affecting such person's life." MHL § 81.01.

119.     The order from the court for an Article 81 guardianship must accomplish, "the least restrictive form of intervention by appointing a guardian with powers limited to those which the court has found necessary to assist the incapacitated person in providing for personal needs and/or property management." MHL § 81.16(c)(2).

120.      Article 17A, in contrast, simply provides "[i]f the court is satisfied that the best interests of the person who is intellectually disabled or person who is developmentally disabled will be promoted by the appointment of a guardian of the person or property, or both, it shall make a decree naming such person or persons to serve as such guardians." SCPA § 1754(5).

121.     The State's Olmstead Cabinet found that "Article 17A does not limit guardianship rights to the individual's specific incapacities, which is inconsistent with the least-restrictive philosophy of Olmstead. Once guardianship is granted, Article 17A instructs the guardian to make decisions based upon the 'best interests' of the person with a disability and does not require the guardian to examine the choice and preference of the person with a disability." Olmstead Report p. 28

**Selection of Guardian; Powers and Oversight**

122.      Article 17A permits any person over the age of 18 not otherwise subjected to guardianship to be appointed as a guardian. SCPA § 1752 (5).

123.      By contrast, Article 81 provides detailed consideration for who should be appointed a guardian, including consideration of the alleged incapacitated person's preferences and nomination. MHL § 81.19.

124.      Article 81 requires the court to consider:

    a.   Any appointment or delegation made by the person alleged to be incapacitated;

    b.   The social relationship between the incapacitated person and the proposed guardian;

    c.   The care and services being provided to the incapacitated person at the time of the proceeding;

    d.   The educational, professional and business experience of the proposed guardian;

    e.   The nature of the financial resources involved;

    f.   The unique requirements of the incapacitated person; and

    g.   Any conflicts of interests between the person proposed as guardian and the incapacitated person.

MHL § 81.19(d)

**Eligibility and Qualification of Guardian**

125.    Article 81 requires court-appointed guardians to visit the person under guardianship a minimum of four times per year, MHL § 81.20(a)(5), but Article 17A does not.

126.    The purpose of this requirement is to assist the guardian in her capacity as a person who is obligated to exercise care and diligence in actions on behalf of the person under the guardianship.

127. The Law Revision Commission stated: "Decision making is a fundamental part of the guardian's role. In order to carry out this responsibility in the most careful and diligent manner, the guardian should develop a personal relationship to the ward, in the event one does not exist, so that the guardian can understand the decision's impacted from the incapacitated person's perspective and involve the incapacitated person in the decisions to the greatest extent possible." Law Revision Comments under MHL § 81.20,

### Reporting and Review

128. Article 81 imposes rigorous reporting and oversight provisions upon the appointment of a guardian. See MHL §§ 81.30, 81.31, 81.32, 81.33.

129. The court is also required under Article 81 to specifically enumerate the powers regarding both property management and personal needs, with which the guardian will be vested. See MHL §§ 81.21, 81.22.

130. In contrast, Article 17A contains no requirement that guardians report annually as to the personal or property status of the person under guardianship.

131. Reporting requirements such as those contained in MHL §§ 81.30 and 81.31, allow the court to determine whether a guardian is fulfilling his or her fiduciary responsibility, and to ensure that the individual's autonomy is being preserved to the maximum extent possible.

132. MHL §§ 81.30 and 81.31 require the guardian to submit written initial and annual reports describing, "the social and personal services that are to be provided for the welfare of the incapacitated person," [MHL § 81.30(c)(2)] and "information concerning the social condition of the incapacitated person, including: the social and personal services currently utilized by the incapacitated person; the social skills of the incapacitated person; and the social needs of the incapacitated person." MHL § 81.31(b)(6)(iv).

133.     The reporting requirement of Article 81 also includes information concerning the incapacitated person's medical and residential needs, and requires the guardian to submit in his or her report any and all facts indicating a need to terminate, or modify the terms of the guardianship. Preservation of the alleged incapacitated person's autonomy to the fullest extent possible is one of the avowed purposes of the reporting requirements. See Law Revision Commission Comments MHL § 81.31

### Modification, Termination & Restoration of Rights

134.     Under Article 17A, a guardianship continues over the entire life of the person under guardianship; there is no limit on duration or subsequent review of the need for continued guardianship. SCPA § 1759(1)

135.     Modification or termination of an Article 17A guardianship requires the person under guardianship or another person on behalf of the person under guardianship to petition the court to modify, dissolve or amend the guardianship order. SCPA § 1759(2)

136.     This proceeding is subject to the same limitations as set forth in SCPA § 1754 which permits the court to dispense with the hearing at the request of the parent.

137.     Article 17A is silent as to the evidentiary standard for when a guardianship is to be modified; however, Surrogate Courts apply the preponderance of the evidence standard to the proceedings.

138.     Article 17A is silent as to which party has the burden when petitioning for modification or dissolution of the guardianship and thus Surrogate Courts place this burden on the party moving for the modification.

139.     MHL Article 81, by contrast, specifically contemplates removal of the guardian or powers where the guardian or the power is no longer necessary.  MHL § 81.36 (a).

140.     Article 81 requires a hearing when a petition for modification or termination is initiated, as well as the right to a jury trial upon request. MHL § 81.36(c)

141.     Significantly, under Article 81, the party opposing the termination of guardianship bears the burden of proving by clear and convincing evidence that the grounds for guardianship continue to exist. MHL § 81.36(d)

142.     Under Article 81, where a petition seeks to increase the powers of a guardian, the petitioner has the burden of proving by clear and convincing evidence that such an increase in power in necessary. MHL § 81.36 (d)

### Right to Vote

143.     Anyone who has been adjudicated incompetent by order of a court of competent judicial authority loses the right to register for or vote at any election in New York State. See NY Elec. Law 5-106

144.     The imposition of a plenary guardianship pursuant to Article 17A adjudicates a person as incompetent without a specific finding that the person is incapable of voting.

### CLAIMS FOR RELIEF

### First Claim for Relief – 42 U.S.C. § 1983 - Substantive Due Process

145.     Plaintiff reasserts and incorporates paragraphs 1 to 144 as though fully set forth herein.

146.     The Fifth and Fourteenth Amendments of the U.S. Constitution provide that neither the federal nor state government shall deprive any person "of life, liberty, or property without due process of law."

147.     The Supreme Court has defined liberty broadly to include "the right of the individual to contract, to engage in any of the common occupations of life, to acquire useful knowledge, to marry, establish a home and bring up children, to worship God…and generally enjoy those privileges long

recognized…as essential to the orderly pursuit of happiness by free men." <u>Roth v. Board of Regents</u>, 408 U.S. 564, 572 (1972) <u>citing</u> <u>Meyer v. Nebraska</u>, 262 U.S. 390, 399 (1923).

148.  The appointment of a plenary guardianship of the person under Article 17A deprives persons of the power to make decisions about where they live, with whom they associate, whether to seek and receive medical treatment, whether to marry and have children, and where they work. <u>See In re Mark C.H.</u>, 28 Misc. 3d 765, 776 (N.Y. Surr. Ct. 2010) <u>citing</u> <u>Matter of Chaim A.K.</u>, 26 Misc. 3d 837 (N.Y. Surr. Ct. 2009); <u>In re D.D.</u>, 50 Misc. 3d 666 (N.Y. Surr. Ct. 2015).

149.  Substantive Due Process under the Fifth and Fourteenth Amendments of the U.S. Constitution forbid the government from infringing on a fundamental liberty interest where the matter is not narrowly tailored to serve a compelling governmental interest.

150.  Guardianship imposed under Article 17A infringes on a person's fundamental rights, liberties and privileges, including:

   a.  a fundamental right to privacy to engage in personal conduct without intervention from state government. <u>Lawrence v. Texas</u>, 539 U.S. 558, 578 (2003).

   b.  a fundamental right to refuse unwanted medical treatment. <u>Cruzan by Cruzan v. Dir., Missouri Dep't of Health</u>, 497 U.S. 261, 278 (1990); and

   c.  a fundamental right to make personal decisions regarding marriage, procreation, contraception, family relationships, child rearing, and education. <u>Planned Parenthood of Se. Pennsylvania v. Casey</u>, 505 U.S. 833, 851, (1992) <u>citing</u> <u>Casey v. Population Services International,</u> 431 U.S. 678, 685 (1977).

151.  Where personal liberty is being deprived courts must apply only the least restrictive form of intervention consistent with the clinical condition of a given individual. <u>See Jackson v. Indiana</u>, 406 U.S. 715, 738 (1972).

152.    Article 17A is unnecessarily broad because it imposes a plenary guardianship of the person, property or person and property that terminates all decision making authority without conducting a functional assessment of the person's ability to care for himself and without narrowly tailoring the guardian's powers to those areas of need.

153.    There is no compelling governmental interest to continue to allow the imposition of Article 17A guardianships.

**Second Claim for Relief – 42 U.S.C. § 1983 - Procedural Due Process**

154.    Plaintiff reasserts and incorporates paragraphs 1 to 153 as though fully set forth herein.

155.    The Fifth and Fourteenth Amendments of the U.S. Constitution provide that neither the federal nor state government shall deprive any person "of life, liberty, or property without due process of law."

156.    The continued authorization of Article 17A guardianships violates a person's right to procedural due process.

157.    Courts look at three factors to determine whether a taking of liberty or property violated a person's rights to procedural due process: "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Matthews v. Eldridge, 424 U.S. 319, 335 (1976).

158.    The appointment of a guardianship over people with disabilities pursuant to Article 17A is an official action of State of New York through the Unified Court System.

159.    The risk of erroneously depriving individuals with disabilities of liberty and property interests through the process of an Article 17A guardianship proceeding is high because,

a.  the notice afforded the person does not reasonably ensure the person is informed of the nature and possible consequences of the proceeding or the right to contest the proceeding;

b.  the person is not entitled to legal representation;

c.  the certifications of two physicians or a physician and psychologist is the primary evidence relied to determine if guardianship should be imposed;

d.  said certifications can be obtained without the knowledge or consent of persons who are minors;

e.  the guardianship is imposed  without considering the functional capacity of the person to make decisions;

f.  the court may dispense with the person's presence in court;

g.  the court may dispense with the hearing;

h.  the decision is made upon a mere preponderance of the evidence;

i.  the statute only permits the appointment of a plenary guardianship;

j.  the court does not need to examine lesser restrictive alternatives to plenary guardianship;

k.  the statute does not require reporting and review of the need for the guardianship;

l.  there are no procedures for the regular review of guardianships or even the termination of the guardianship; and

m.  the process for removal of guardianship places the burden on a person seeking to remove the guardianship.

160.    Further, the probative value of additional or substitute procedural safeguards is high as demonstrated by the due process protections afforded by Article 81 including:

a.  the notice must inform the allegedly incapacitated person of the nature and possible consequences of the proceeding and the right to contest the proceeding;

b.  the person is entitled to legal representation;

c.  appointment of guardianship based upon the functional capacity of the person to make decisions;

d.  procedures for ensuring the person's presence at the hearing;

e.  the court may not dispense with the hearing without the allegedly incapacitated individual's consent;

f.  a decision made upon clear and convincing evidence;

g.  the court must examine lesser restrictive alternatives to guardianship;

h.  the statute directs that if a guardian is appointed it is tailored to the person's needs;

i.  procedures for the regular review of guardianships and the termination of the guardianship;

j.  requires reporting and review of the need for the guardianship; and

k.  the process for removal of guardianship places the burden on a person seeking to continue the guardianship.

161.    Individuals with disabilities subject to Article 17A guardianship orders routinely go their entire lives without anyone reviewing the continued necessity for the guardianship order.

162.    The nature and duration of the guardianship must bear some reasonable relation to the purpose for which the individual is committed to guardianship. See Jackson v. Indiana, 406 U.S. 715, 731(1972) (Supreme Court has held that a law permitting indefinite commitment of a criminal defendant solely on account of his incompetency to stand trial violates the guarantee of proper procedural due process).

163.      The Government's interest for appointing guardianship over a person under Article 17A is to protect the person with a disability.  The appointment of guardianship without procedural due process protections is contrary to this governmental interest.

164.      One of New York State's courts administered by defendants Chief Judge DiFiore and Chief Administrative Judge Marks has already concluded that the failure to periodically review Article 17A guardianships is unconstitutional.  See In re Mark C.H., 28 Misc.3d 765 (N.Y. Surr. Ct. 2010) (holding that periodic reporting is required so that " . . . the court can ascertain whether the deprivation of liberty resulting from guardianship is still justified by the ward's disabilities, or whether she has progressed to a level where she can live and function on her own.")

165.      The New York State Unified Court System is already equipped to provide the procedural protections needed to address the lack of due process in Article 17A because the Supreme Courts, which defendants Chief Judge DiFiore and Chief Administrative Judge Marks also administers, already provide procedural due process protections to persons with developmental and intellectual disabilities brought under MHL Article 81.

**Third Claim for Relief - 42 U.S.C. § 1983 – Equal Protection**

166.      Plaintiff reasserts and incorporates paragraphs 1 to 165 as though fully set forth herein.

167.      Under the Fourteenth Amendment of the U.S. Constitution, individuals subjected to Article 17A guardianship proceedings are entitled to Equal Protection of the laws and should not be subject to a statute which denies them Equal Protection in comparison to others similarly situated.

168.      The Fourteenth Amendment requires that where a person's fundamental rights and liberties are implicated, "classification which might invade or restrain them must be closely scrutinized and carefully confined." See Harper v. Virginia State Bd. of Elections, 383 U.S. 663, 670 (1966).

169.     Fundamental liberty interests protected by the U.S. Constitution encompass "not merely freedom from bodily restraint but also the right of the individual to contract, to engage in any of the common occupations of life, to acquire useful knowledge, to marry, establish a home and bring up children ... and generally to enjoy those privileges long recognized at common law as essential to the orderly pursuit of happiness by free men." Meyer v. Nebraska, 262 U.S. 390, 399 (1923).

170.     Courts within New York State's Unified Court System have already ruled that guardianship constitutes a significant taking of liberty which implicates fundamental freedoms. See In re Mark C.H., 28 Misc. 3d 765, 775-777 (N.Y. Surr. Ct. 2010); In re D.D., 50 Misc. 3d 666, 668 (N.Y. Surr. Ct. 2015).

171.     In cases involving deprivations of personal liberty, courts are required to impose only the least restrictive form of intervention consistent with the clinical condition of a given individual. See Jackson v. Indiana, 406 U.S. 715, 738 (1972); See also Kesselbrenner v. Anonymous, 33 N.Y.2d 161, 165 (1973) ("To subject a person to a greater deprivation of his personal liberty than necessary to achieve the purpose for which he is being confined is, it is clear, violative of due process"); Carter v. Beckwith, 128 N.Y. 312, 319 (1891) ("[The] exercise of the jurisdiction of the court to deprive a person of his liberty and property on the ground of lunacy, however necessary, is, nevertheless, the exercise of a supreme power, and should be surrounded by all reasonable safeguards to prevent mistake or fraud...").

172.     Guardianship proceedings for individuals living with intellectual or developmental disabilities may, under current law, be brought either pursuant to Article 17A or Article 8l.

173.     MHL Article 81:

      a.     limits the appointment of guardianship even if the person is found to be incapacitated;

b.  ensures sufficient notice is provided to reasonably inform the alleged incapacitated person of the nature and potential consequences of the proceeding and the right to a hearing and counsel;

c.  applies the clear and convincing standard for the appointment of guardianship;

d.  provides access to legal representation;

e.  mandates an evidentiary hearing be held to allow for the greatest participation of the alleged incapacitated person;

f.  mandates periodic reporting on the status of the guardianship;

g.  prescribes a mechanism for termination of guardianship;

h.  places the burden for the continuation of the guardianship on the party seeking to continue the guardianship;

i.  specifically directs that guardianship must be administered in the least restrictive manner after consideration of all other alternatives.

174.  In stark contrast, Article 17A

a.  relies exclusively on the best interest standard for appointment of guardianship;

b.  applies a lesser evidentiary standard (preponderance of the evidence) for the appointment of guardianship;

c.  fails to provide notice reasonably certain to inform the allegedly incapacitated person of the nature and consequences of the proceeding;

d.  lacks any procedure for the appointment of legal counsel;

e.  permits hearings to be waived with the consent of a petitioner;

f.  permits the presence of the alleged incapacitated person at the hearing to be waived;

g.  places the burden on the person with a disability to modify or terminate the
    guardianship;

h.  specifically directs that all guardianships are plenary without consideration for any
    other lesser restrictive alternatives.

175.     There is no compelling or legitimate governmental interest for applying greater
protections for appointing a guardianship over a person with an intellectual or developmental disability in
one court proceeding (Article 81) and applying a totally different and lesser standard over a person with
an intellectual or developmental disability in another court (Article 17A).

**Fourth Claim for Relief – ADA claim under 42 U.S.C. § 12132**

176.     Plaintiff reasserts and incorporates paragraphs 1 to 175 as though fully set forth herein.

177.     Under the Americans with Disabilities Act (42 U.S.C.A. § 12132) ("ADA"), a qualified
individual with a disability may not be subject to discrimination for reason of his disability by any state
entity or program receiving federal support. 42 U.S.C.A. § 12132.

178.     A disability is defined as "a physical or mental impairment that substantially limits one or
more major life activities of such individual." 42 U.S.C. § 12102(1)(A).

179.     The definition of disability must be construed in favor of broad coverage of individuals
under the ADA.  42 U.S.C. § 12102(4)(A).

180.     A "qualified individual with a disability" is defined as "an individual with a disability who
… meets the essential eligibility requirements for the receipt of services or the participation in programs
or activities provided by a public entity." United States v. Georgia, 546 U.S. 151, 153–54 (2006) (quoting
42 U.S.C. § 12131(2)).

181.     Individuals with intellectual disabilities and developmental disabilities qualify as having
disabilities under New York Law. See SCPA §§  1750-1750-a

182.     The New York Unified Court System is the judicial arm of the New York State Government.

183.     Individuals with disabilities who are subjected to an Article 17A proceeding do not have a choice of forum for the guardianship proceeding. The petitioner seeking the guardianship elects the forum.

184.     Individuals with intellectual and developmental disabilities are placed under Article 17A guardianships because of their disabilities.

185.     Failure to afford qualified individuals with disabilities the procedures and protections afforded to other individuals with disabilities through Article 81 – including consideration of the least restrictive form of intervention in determining the need for a guardian - has a discriminatory effect.

186.     Individuals with disabilities must not be subjected to a different guardianship standard which presents greater barriers to their full participation in society or enjoyment of their rights and liberties.

187.     In order to avoid a discriminatory outcome, defendants must make reasonable modifications.

188.     The defendants recognize the discriminatory impact of the strict application of Article 17A but have not taken steps to reasonably modify the practice of appointing guardianships.

### Fifth Claim for Relief –Section 504, 29 U.S.C. § 794

189.     Plaintiff reasserts and incorporates paragraphs 1 to 188 as though fully set forth herein.

190.     Section 504 of the Rehabilitation Act requires that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a).

191.     A disability is defined as "a physical or mental impairment that substantially limits one or more major life activities of such individual." 29 U.S.C. § 705(9)(B) *citing* 42 U.S.C. § 12102(1)(A).

192.     The definition of disability must be construed in favor of broad coverage of individuals under Section 504. See 42 U.S.C. § 12102(4)(A).

193.     Individuals with intellectual disabilities and developmental disabilities qualify as having disabilities under New York Law. SCPA § 1750-1750-a.

194.     The term "program and activity means all the operations of a department, agency, special purpose district, or other instrumentality of a State." 29 U.S.C. § 794(b)(1)(A)

195.     The New York Unified Court System is the judicial arm of the State of New York.

196.      New York State received federal financial assistance to operate programs and activities in New York State.

197.     The New York State Unified Court System receives federal assistance in the form of grants which it distributes to programs it administers and is therefore a covered public entity under Section 504. See NY State Unified Court System, Fiscal Year 2016-2017 Budget at https://www.nycourts.gov/admin/financialops/Budgets.shtml.

198.     Individuals with disabilities who are subjected to an Article 17A proceeding do not have a choice of forum for the guardianship proceeding. The petitioner seeking the guardianship elects the forum.

199.     Individuals with qualifying disabilities are placed under Article 17A guardianships because of their disabilities.

200.     Failure to afford qualified individuals with disabilities the procedures and protections afforded to other individuals with disabilities through MHL Article 81 – including consideration of the least restrictive form of intervention in determining the need for a guardian - has a discriminatory effect.

201.     Individuals with intellectual and developmental disabilities must not be subjected to a different guardianship standard which presents greater barriers to their full participation in society or enjoyment of their rights and liberties.

202.     In order to avoid a discriminatory outcome defendants must make reasonable modifications.

203.     The defendants recognize the discriminatory impact of the strict application of Article 17A but have not taken steps to reasonably modify the practice of appointing guardianships.

<u>**RELIEF REQUESTED**</u>

**THEREFORE**, Plaintiff respectfully ask that this Court grant the following relief against defendants, including:

1)     Entering a declaratory judgment, pursuant to Rule 57 of the Federal Rules of Civil Procedure, stating that

    a.  Article 17A violates the United States Constitution;

    b.  Article 17A violates the Americans with Disabilities Act; and

    c.  Article 17A violates Section 504 of the Rehabilitation Act of 1973.

2)     Entering a permanent injunction requiring defendants to

    a.  notify all people who are currently subject to guardianship orders pursuant to Article 17A of their right to request modification or termination the guardianship order; and

    b.  upon defendants receiving such a request, to promptly hold a proceeding regarding termination or modification of the order, at which the burden of proof by clear and convincing evidence shall be on the party opposing the termination or modification of the order, and which provides substantive and procedural rights to the allegedly

incapacitated person that are no less than the substantive and procedural rights of an

allegedly incapacitated person in an MHL Article 81 proceeding.

3)    Permanently enjoining defendants from adjudicating incapacity and appointing guardians

pursuant to SCPA Article 17A, until defendants ensure that the proceedings provide substantive and

procedural rights that do not violate the United States Constitution, the Americans with Disabilities Act,

and Section 504 of the Rehabilitation Act of 1973, and which are not inferior to the substantive and

procedural rights enjoyed by allegedly incapacitated persons in MHL Article 81 proceedings.

4)    Awarding reasonable costs and attorneys' fees, and awarding any and all other relief,

according to proof, that may be necessary and appropriate.

DATED:       September 21, 2016

             Albany, New York

Respectfully submitted,

*Jennifer J. Monthie*

DISABILITY RIGHTS NEW YORK
Attorneys for Plaintiff

     TIMOTHY A. CLUNE
     Bar Roll No. TC1506

     JENNIFER J. MONTHIE
     Bar Roll No. JM4077

725 Broadway, Suite 450
Albany, New York 12207
(518) 432-7861 (telephone)
(518) 427-6561 (fax) (not for service)