UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X
DISABILITY RIGHTS NEW YORK,                          :
                                                     :
                                    Plaintiff,       :
                                                     :
                    -against-                        :          No. 16 Civ. 7363 (AKH)
                                                     :
NEW YORK STATE, UNIFIED COURT SYSTEM OF              :
THE STATE OF NEW YORK, Honorable JANET               :
DIFIORE, as Chief Judge of the New York State Unified :
Court System, Honorable LAWRENCE K. MARKS, as       :
Chief Administrative Judge of the New York State     :
Unified Court System,                                :
                                                     :
                                    Defendants.      :
----------------------------------------------------------------------X


## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

ERIC T. SCHNEIDERMAN
Attorney General of the State of New York
120 Broadway
New York, New York 10271
(212) 416-8651
*Attorney for Defendants*

MICHAEL A. BERG
JONATHAN D. CONLEY
Assistant Attorneys General

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................................... ii

PRELIMINARY STATEMENT ................................................................................. 1

FACTUAL AND PROCEDURAL BACKGROUND.................................................. 2

    A.  New York State's Guardianship Statutes......................................................... 2

    B.  The Allegations of the Complaint ................................................................... 4

    C.  DRNY's Section 1983, ADA, and Rehabilitation Act Claims ........................ 6

ARGUMENT ............................................................................................................. 7

I.      RULE 12(c) PLEADING STANDARDS ....................................................... 7

II.     PRINCIPLES OF ABSTENTION BAR THIS ACTION .................................. 8

III.    SOVEREIGN IMMUNITY BARS DRNY'S SECTION 1983 CLAIMS
       AGAINST NEW YORK STATE AND THE UNIFIED COURT SYSTEM ................... 14

IV.   THE COMPLAINT FAILS TO STATE A CLAIM UNDER THE EQUAL
       PROTECTION CLAUSE, THE ADA, OR THE REHABILITATION ACT .................. 16

A.    DRNY Fails to Allege a Violation of the Equal Protection Clause ..................... 16

B.    The Complaint Fails to Allege Violations of the ADA and Rehabilitation Act ............. 20

V.    DRNY CANNOT PREVAIL ON ITS FACIAL CHALLENGE
      TO SURROGATE'S COURT PROCEDURE ACT ARTICLE 17-A ................................ 23

VI.  CHIEF JUDGE DiFIORE AND CHIEF ADMINISTRATIVE
       JUDGE MARKS ARE ENTITLED TO QUALIFIED IMMUNITY .................................. 28

CONCLUSION.......................................................................................................... 30

# TABLE OF AUTHORITIES

**Cases**                                                            **Page(s)**

*Adeniji v. Admin. for Children Servs.*,
  43 F.Supp.2d 407 (S.D.N.Y. 1999), aff'd, 201 F.3d 430 (2d Cir. 1999)...............22

*Anobile v. Pelligrino*,
  303 F.3d 107 (2d Cir. 2001).........................................................................27

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).................................................................................7

*Aurecchione v. Schoolman Transp. Sys., Inc.*,
  426 F.3d 635 (2d Cir. 2005)......................................................................7

*Brown v. N.Y. State Unified Court Sys.*,
  261 F. App'x 307 (2d Cir. 2008) ...............................................................15

*Catlin v. Sobol*,
  93 F.3d 1112 (2d Cir. 1996).....................................................................17

*Chick v. Cnty. of Suffolk*,
  No. 11 Civ. 2855 (LDW) (WDW), 2013 WL 685661 (E.D.N.Y. Feb. 22,
  2013), aff'd, 546 F. App'x 58 (2d Cir. 2013) ..............................................16

*City of Cleburne v. Cleburne Living Ctr.*,
  473 U.S. 432 (1985).................................................................................16

*City of Los Angeles v. Patel*,
  135 S. Ct. 2443 (2015)..............................................................................23

*Connecticut ex rel. Blumenthal v. Crotty*,
  346 F.3d 84 (2d Cir. 2003).........................................................................28

*Cruz v. AAA Carting & Rubbish Removal, Inc.*,
  116 F. Supp. 3d 232 (S.D.N.Y. 2015).........................................................7

*Cruzan by Cruzan v. Dir., Missouri Dep't of Health*,
  497 U.S. 261 (1990).................................................................................13

*Cullen v. Fliegner*,
  18 F.3d 96 (2d Cir. 1994).....................................................................11, 17

*Davis v. Shah*,
  821 F.3d 231 (2d Cir. 2016).......................................................................21

*Diaz v. Paterson*,
  547 F.3d 88 (2d Cir. 2008) .......................................................................23

ii

*Dickerson v. Napolitano*,
  604 F.3d 732 (2d Cir. 2010).................................................................23-24

*Disabled in Action v. Bd. of Elections in City of N.Y.*,
  752 F.3d 189 (2d Cir. 2014)...................................................................21

*Doe v. City of New York*,
  No. 05-CV-5439 (RRM) (SMG), 2009 WL 7295358 (E.D.N.Y. Nov. 10,
  2009) (Report and Recommendation), *adopted by* 2011 WL 37131 (E.D.N.Y.
  Jan. 5, 2011), *aff'd,* 473 F. App'x 24 (2d Cir. 2012).....................................22

*Ehrlich v. Town of Glastonbury*,
  348 F.3d 48 (2d Cir. 2003).....................................................................27

*Ex Parte Young*,
  209 U.S. 123 (1908).............................................................................14

*Falco v. Justices of Sup. Ct.*,
  805 F.3d 425 (2d Cir. 2015)..............................................................8-9, 11

*Field Day, LLC v. Cnty. of Suffolk*,
  463 F.3d 167 (2d Cir. 2006)...................................................................29

*Fulton v. Goord*,
  591 F.3d 37 (2d Cir. 2009).....................................................................21

*Giano v. Senkowski*,
  54 F.3d 1050 (2d Cir. 1995)...................................................................19

*Gibson v. Berryhill*,
  411 U.S. 564 (1973)...............................................................................8

*Gollomp v. Spitzer*,
  568 F.3d 355 (2d Cir. 2009)...............................................................14-15

*Hansel v. Town Court*,
  56 F.3d 391 (2d Cir. 1995).....................................................................10

*Harmon v. Runyon*,
  No. 96 Civ. 6080, 1997 WL 786383 (S.D.N.Y. Dec. 19, 1997)......................22

*Harris v. Mills*,
  572 F.3d 66 (2d Cir. 2009)..................................................................8, 20

*Hayden v. Paterson*,
  594 F.3d 513 (E.D.N.Y. 2014)..................................................................8

iii

*Heller v. Doe by Doe*,
509 U.S. 312 (1993)...................................................................................9, 11, 17

*Hemon v. Office of Pub. Guardian*,
878 F.2d 13 (1st Cir. 1989)...........................................................................9

*Henny v. New York*,
842 F.Supp.2d 530 (S.D.N.Y. 2012)...........................................................22

*Henrietta D. v. Bloomberg*,
331 F.3d 261 (2d Cir. 2003)..........................................................................21

*Huffman v. Pursue, Ltd.*,
420 U.S. 592 (1975)......................................................................................12

*In re Baby Boy W.*,
3 Misc. 3d 656 (Sur. Ct., Broome Cnty. 2004)................................................11, 17

*In re Guardianship of Chantel Nicole R.*,
34 A.D.3d 99 (1st Dep't 2006) .....................................................................11

*In re Guardianship of Mueller*,
25 Misc. 3d 165, 887 N.Y.S.2d 768 (Sur. Ct. Dutchess Cnty. 2009) .......................18

*In re K.L.*,
1 N.Y.3d 362 (N.Y. 2004) ...........................................................................9, 11, 18

*In re M.B.*,
6 N.Y.3d 437 (N.Y. 2006) ...........................................................................11, 17

*In re Mark C.H.*,
28 Misc. 3d 765, 906 N.Y.S.2d 419 (Sur. Ct. N.Y. Cnty. 2010)......................25, 27

*Jackson v. Indiana*,
406 U.S. 715 (1972).....................................................................................13

*Jude v. New York*,
No. 07 Civ. 5890 (RJS), 2008 WL 928134 (S.D.N.Y. Mar. 30, 2009) ................14

*Juidice v. Vale*,
430 U.S. 327 (1977).....................................................................................8-9

*Kaufman v. Kaye*,
466 F.3d 83 (2d Cir. 2006).............................................................................9-10

*King v. Cuomo*,
465 F. App'x 42 (2d Cir. 2012) ...................................................................29

*Kirschner v. Klemons*,
    225 F.3d 227 (2d Cir. 2000)...............................................................................12

*Lawrence v. Texas*,
    539 U.S. 558 (2003)...........................................................................................13

*Marino v. City Univ. of N.Y.*,
    18 F. Supp. 3d 320 (E.D.N.Y. 2014) ................................................................20

*Matter of Caitlin*,
    NYLJ 1202784243973 (Sur. Ct. Kings Cnty. Mar. 16, 2017)..............................26

*Matter of Chaim A.K.*,
    26 Misc. 3d 837, 885 N.Y.S.2d 582 (Sur. Ct. N.Y. Cnty. 2009) ...........................18

*Matter of CK*,
    11 Misc. 3d 1087(A), 819 N.Y.S.2d 847 (Sur. Ct. Albany Cnty. 2006) ...............25

*Matter of Cruz*,
    Index No. 500001/01, 2001 WL 940206 (Sup. Ct. N.Y. Cnty. July 16, 2001) .................3, 18

*Matter of Dameris L.*,
    38 Misc. 3d 570, 956 N.Y.S.2d 848 (Sur. Ct. N.Y. Cnty. 2012) ...........................27

*Matter of Kevin Z.*,
    105 A.D.3d 1269, 966 N.Y.S.2d 226 (3d Dep't 2013) ........................................25

*Matter of Lavecchia*,
    170 Misc. 2d 211, 650 N.Y.S.2d 955 (Sup. Ct. Rockland Cnty. 1996)............................3, 18

*Matter of Leon*,
    53 Misc. 3d 1204(A), 43 N.Y.S.3d 769 (Sur. Ct. Kings Cnty. Oct. 3, 2016).......................27

*Matter of Michelle M.*,
    52 Misc. 3d 1211(A) (Sur. Ct. Kings Cnty. 2016).................................................27

*Matter of St Luke's–Roosevelt Hosp. Ctr. (Marie H.)*,
    89 N.Y.2d 889, 653 N.Y.S.2d 257 (1996) ........................................................25

*Matter of Yvette A.*,
    27 Misc. 3d 945, 898 N.Y.S.2d 420 (Sur. Ct. N.Y. Cnty. 2010) ...........................27

*Matter of Zachary W.*,
    Index No. 2015-2442, NYLJ 1202784677568 (Sur. Ct. Suff. Cnty. Mar. 30,
    2017) ...........................................................................................25-26

*Matter of Zhuo*,
    53 Misc. 3d 1121, 42 N.Y.S.3d 530 (Sur. Ct. Kings Cnty. Sept. 30, 2016) ..........................27

*McClellan v. Smith,*
    439 F.3d 137 (2d Cir. 2006)............................................................................28

*McCluskey v. N.Y. State Unified Court Sys.,*
    442 F. App'x 586 (2d Cir. 2011) ...................................................................15

*Meyer v. Nebraska,*
    262 U.S. 390 (1923)........................................................................................13

*Middlesex County Ethics Commission v. Garden State Bar Association,*
    457 U.S. 423 (1982)................................................................................... 10-11

*Milo v. City of New York,*
    59 F. Supp. 3d 513 (E.D.N.Y. 2014) ............................................................ 7-8

*Moore v. Kingsbrook Jewish Med. Ctr.,*
    No. 11 Civ. 3625, 2013 WL 3968748 (E.D.N.Y. July 30, 2013) ..........................22

*Morales v. State of N.Y.,*
    22 F. Supp. 3d 256 (S.D.N.Y. 2014).............................................................15

*Morrison v. Nat'l Austl. Bank Ltd.,*
    547 F.3d 167 (2d Cir. 2008), aff'd, 561 U.S. 247 (2010) ..............................7

*New York v. Ferber,*
    458 U.S. 747 (1982)........................................................................................13

*O'Leary v. Town of Huntington,*
    No. 11 Civ. 3754 (JFB) (GRB), 2012 WL 3842567 (E.D.N.Y. Sept. 5, 2012).....................17

*O'Shea v. Littleton,*
    414 U.S. 488 (1974)..................................................................................... 9-10

*Paul v. N.Y. State Dep't of Motor Vehicles,*
    2003 WL 253065 ....................................................................................... 11-12

*Pennhurst State Sch. & Hosp. v. Halderman,*
    465 U.S. 89 (1984)..........................................................................................15

*Pennzoil v. Texaco,*
    481 U.S. 1 (1987)..............................................................................................8

*Powell v. Nat'l Bd. of Med. Exam'rs,*
    364 F.3d 79, *corrected,* 511 F.3d 238 (2d Cir. 2004) ................................20

*Quern v. Jordan,*
    440 U.S. 332 (1979)........................................................................................15

*Quill v. Vacco*,
   80 F.3d 716 (2d Cir. 1996)...................................................................................17

*Restivo v. Hessemann*,
   846 F.3d 547 (2d Cir. 2017)................................................................................15

*Rivers v. Katz*,
   67 N.Y.2d 485, 504 N.Y.S.2d 74 (1986) ...........................................................17

*Sabri v. United States*,
   541 U.S. 600 (2004)............................................................................................13

*Sinclair v. Goord*,
   2009 WL 9056089 (S.D.N.Y. Mar. 10, 2009) ....................................................29

*Skates v. Inc. Vill. of Freeport*,
   No. 15 Civ. 1136 (SJF) (AYS), 2016 WL 1459659 (E.D.N.Y. Jan. 28, 2016) .........7

*Spargo v. N.Y. State Comm'n on Judicial Conduct*,
   351 F.3d 65 (2d Cir. 2003).............................................................................. 11-12

*Sprint Commc'ns Inc. v. Jacobs*,
   134 S. Ct. 584 (2013)................................................................................... 8-9, 11

*Suffolk Parents of Handicapped Adults v. Wingate*,
   101 F. 3d 818 (2d Cir. 1996)..........................................................................16, 19

*Thibodeau v. Portuondo*,
   486 F.3d 61 (2d Cir. 2007)..................................................................................23

*Thomas v. City of New York*,
   814 F. Supp. 1139 (E.D.N.Y. 1993) ...................................................................13

*Thomas v. Sullivan*,
   922 F.2d 132 (2d Cir. 1990)................................................................................17

*Traynor v. Turnage*,
   485 U.S. 535 (1988)....................................................................................... 22-23

*Trotman v. Palisades Interstate Park Comm'n*,
   557 F.2d 35 (2d Cir. 1977)..................................................................................15

*Troxel v. Granville*,
   530 U.S. 57 (2000)...............................................................................................12

*United States v. Decastro*,
   682 F.3d 160 (2d Cir. 2012)................................................................................23

vii

*United States v. Salerno,*
    481 U.S. 739 (1987)........................................................................23

*Vandermark v. City of New York,*
    391 F. App'x 957 (2d Cir. 2010) ....................................................17

*Viteritti v. Inc. Vill. of Bayville,*
    831 F. Supp. 2d 583 (E.D.N.Y. 2011) ............................................16

*Vives v. City of New York,*
    405 F.3d 115 (2d Cir. 2005)......................................................28-29

*Wallace v. Kern,*
    520 F.2d 400 (2d Cir. 1975)............................................................9

*Wallace v. New York,*
    40 F. Supp. 3d 278 (E.D.N.Y. 2014) ........................................14-15

*Wash. State Grange v. Wash. State Republican Party,*
    552 U.S. (2008)..............................................................................24

*Will v. Mich. Dep't of State Police,*
    491 U.S. 58 (1989)..........................................................................15

*Windsor v. United States,*
    699 F.3d 169 (2d Cir. 2012), aff'd, 133 S. Ct. 2675 (2013) ..........17

*Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ.,*
    466 F.3d 232 (2d Cir. 2006) ......................................................14-15

*Xu v. City of New York,*
    No. 08 Civ. 11339, 2010 WL 3060815 (S.D.N.Y. Aug. 3, 2010) ...........7

*Yuen Jin v. Mukasey,*
    538 F.3d 143 (2d Cir. 2008)............................................................17

*Zuckerman v. Appellate Div., Second Dep't, Sup. Ct. of N.Y.,*
    421 F.2d 625 (2d Cir.1970)............................................................16

## CONSTITUTIONAL PROVISIONS

U.S. Const., amend. V...............................................................6, 16

U.S. Const., amend. XI ...........................................................14-16

U.S. Const., amend XIV ...................................................6, 11, 13-14

STATUTES

29 U.S.C.
 § 794(a) .................................................................................................................20

42 U.S.C.
 § 1983 ............................................................................................................... passim

Americans with Disabilities Act, 42 U.S.C.
 § 12132 ............................................................................................................. passim

Rehabilitation Act
 § 504, 29 U.S.C. § 794 ..................................................................................... passim

N.Y. Surrogate's Court Procedure Act ("SCPA")
 17-A .........................................................................................................................8
 §§ 1719 & 1761 .......................................................................................................27
 §§ 1750 and 1750-b ................................................................................................11
 § 1754 ......................................................................................................................24
 § 1758 ......................................................................................................................27

FEDERAL RULES OF CIVIL PROCEDURE

Fed. R. Civ. P. 12(b)(1) .....................................................................................7, 14, 15

Fed. R. Civ. P. 12(b)(6) .....................................................................................7, 15, 16

Fed. R. Civ. P. 12(c) ...................................................................................................1, 7

Fed. R. Civ. P. 12(h)(3) ...........................................................................................1, 14

STATE STATUTES

Mental Hygiene Law
 Article 81 .......................................................................................................... passim

New York Mental Hygiene Law ("MHL")
 § 81 ............................................................................................................................1
 § 81.02(c) ..................................................................................................................4
 § 81.16(c)(2) .............................................................................................................5
 § 81.31 .....................................................................................................................27

New York Surrogate's Court Procedure Act
 Article 17-A ..................................................................................................... passim
 § 1750 Commentary ..............................................................................................3, 18

MISCELLANEOUS AUTHORITIES

www.nycourts.gov/courthelp/Guardianship/17A.shtml .................................................5

Defendants the State of New York (the "State"), the New York State Unified Court System (the "UCS"), Chief Judge Janet DiFiore, and Chief Administrative Judge Lawrence K. Marks (collectively, "Defendants") respectfully submit this memorandum of law in support of their Motion for Judgment on the Pleadings pursuant to Fed. R. Civ. P. 12(c) and 12(h)(3).

## PRELIMINARY STATEMENT

Since 1969, New York State law has provided for the appointment of guardians of individuals with intellectual disabilities, and by more recent amendment, developmental disabilities. Article 17-A of the New York Surrogate's Court Procedure Act ("Article 17-A") governs these guardianship proceedings in the New York State Surrogate's Courts. Article 17-A provides presiding judges with the flexibility to conduct hearings and jury trials, appoint counsel for the allegedly incapacitated person, and require periodic reporting concerning the guardian's activities and the ward's well-being. Nevertheless, the plaintiff in this action, an advocacy group known as Disability Rights New York ("DRNY"), alleges that Article 17-A is unconstitutional on its face because it does not expressly mandate the full panoply of procedures required under a separate and later-adopted guardianship statute, New York Mental Hygiene Law Article 81 ("Article 81"). DRNY purports to challenge Article 17-A under 42 U.S.C. § 1983 as violative of due process and equal protection, and under the Americans with Disabilities Act (the "ADA") and the Rehabilitation Act.  This action should be dismissed for several reasons.

First, the *Younger* abstention doctrine bars the exercise of federal jurisdiction over this challenge to the procedures governing ongoing state court proceedings. *See* Argument, Part II, *infra*.

Second, sovereign immunity bars this action in its entirety against the State and UCS. In addition, constitutional claims cannot be sustained against the State and the UCS, which are not "persons" subject to suit under Section 1983. *See* Argument, Part III, *infra*.

Third, DRNY's claims are subject to dismissal in part for failure to state a claim on which relief can be granted. The Equal Protection claim fails under the applicable "rational basis" standard of review. The ADA and Rehabilitation Act claims likewise fail because DRNY has not alleged any animus based on a disability, or that individuals with intellectual or developmental disabilities who are subject to Article 17-A proceedings are treated less favorably than individuals without such disabilities. *See* Argument, Part IV, *infra*.

Fourth, the Complaint fails to plausibly state a facial challenge to Article 17-A, as it does not (and cannot) allege that there are no reasonably conceivable circumstances in which the statute may be applied constitutionally. *See* Argument, Part V, *infra*.

Finally, DRNY's claims against Judges DiFiore and Marks are barred on qualified immunity grounds. *See* Argument, Part VI, *infra*.

Accordingly, the Complaint should be dismissed, in its entirety, with prejudice.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.   New York State's Guardianship Statutes

The New York State Legislature has established two distinct statutory regimes for seeking guardianships over individuals with intellectual and developmental disabilities. Guardianships may be sought in Surrogate's Court under Article 17-A of the Surrogate's Court Procedure Act or in Supreme Court under Article 81 of the Mental Hygiene Law.

The Practice Commentary to Article 17-A explains that the statute's predecessor was adopted in 1969 to authorize guardians to make decisions for intellectually disabled individuals

upon reaching the age of majority. Margaret Valentine Turano, Practice Commentary, N.Y. Sur. Ct. Proc. Act Law § 1750 (McKinney). "The original Article 17-A authorized the Surrogate to appoint a guardian of the person or property or both of a mentally retarded person if such appointment served her best interests. Its greatest deficiency was that it applied only to mentally retarded, and not to developmentally disabled persons. The legislature therefore repealed the original statute in 1989 and replaced it with the current Article 17-A, which permits the court to appoint a guardian for both mentally retarded and developmentally disabled persons." *Id.* The statute was further amended in 2016 to replace the term "mentally retarded" with the term "intellectually disabled." *Id.*

Mental Hygiene Law Article 81 was adopted in 1992. "The Article 81 proceeding overlaps somewhat with the Article 17-A proceeding, but the Article 17-A proceeding is most often used to ensure long-term guardianship of the child who never was and never will be able to care for herself. It permits her parents to serve as her legal guardians while they live and to nominate successors to serve when they are gone." *Id.* As one State Supreme Court decision explained:

> The purpose of Article 81 of the Mental Hygiene Law was to address the decisionmaking needs of disabled older adults and to replace the existing statutes governing conservators of property and committees under Articles 77 and 78. It was not intended as an alternative to the existing statutes governing infants and mentally retarded and developmentally disabled persons under Articles 17 and 17-A of the Surrogate's Court Procedure Act. In the case of an infant who is physically disabled, an Article 17 guardianship proceeding is the more appropriate proceeding to appoint a guardian than an Article 81 Mental Hygiene Law guardianship proceeding.

*Matter of Lavecchia*, 170 Misc. 2d 211, 213, 650 N.Y.S.2d 955, 957 (Sup. Ct. Rockland Cnty. 1996); *see also Matter of Cruz*, Index No. 500001/01, 2001 WL 940206, at *4 (Sup. Ct. N.Y. Cnty. July 16, 2001) ("S.C.P.A. Article 17-A continues as a simple guardianship device, based

upon principles of *in loco parentis*, primarily securing for relatives the legal right to make health care decisions for a mentally disabled child or adult, while M.H.L. Article 81 is available for more complex situations, *e.g.*, where the ward has greater functional capacity or where assets support a greater range of choices." (citation omitted)).

    **B.**    <u>The Allegations of the Complaint</u>

       The Complaint does not acknowledge the distinct purposes served by the two guardianship statutes. Instead, the Complaint merely highlights the differences between Article 17-A and Mental Hygiene Law Article 81, and asserts that every difference reflects a constitutional shortcoming in Article 17-A.

       The distinctions between the statutes as alleged by Plaintiff can be generally grouped into three categories: legal standards, matters of procedure, and the guardian's powers and obligations. First, in terms of the applicable legal standards, Article 17-A guardianships may be granted based on a showing that two physicians (or a physician and psychologist) have certified that the person for whom guardianship is sought has an intellectual or developmental disability, which is permanent or likely to persist indefinitely, and that the guardianship is in his or her best interest. Compl. ¶¶ 33, 68-69 & 88. By contrast, Article 81 guardianships are not "diagnosis driven" but are based on any "functional limitations which impair the person's ability to provide for personal needs or property management." Compl. ¶ 43 (quoting MHL § 81.02(c)). Further, Surrogate's Courts grant Article 17-A guardianships based on a "preponderance of the evidence," Compl. ¶ 137, while Article 81 guardianship proceedings are subject to the "clear and convincing evidence" standard, *id*. ¶ 98.

       Second, procedurally, Article 17-A directs the court to conduct a hearing for the appointment of a guardian, but permits the court, in its discretion, to waive the hearing

requirement in specified circumstances. Compl. ¶ 90. By contrast, Article 81 requires a hearing

unless the alleged incapacitated person consents to the appointment of a guardian. *Id.* ¶ 93. In

addition, Article 17-A does not require the appointment of an attorney for the alleged

incapacitated person, Compl. ¶ 99, although the case law demonstrates that Surrogate's Courts

have exercised their inherent power to appoint attorneys for such persons in appropriate cases.

By contrast, Article 81 affirmatively requires the appointment of an attorney for the alleged

incapacitated person at the latter's request and in other specified circumstances. *Id.* ¶ 107.

Third, in terms of the guardian's powers and duties, Article 17-A provides for a plenary

guardianship that "covers most decisions that are usually made by a parent for a child such as

financial and healthcare decisions." *Id.* ¶ 110 (citing

www.nycourts.gov/courthelp/Guardianship/17A.shtml). By contrast, Article 81 requires that the

court limit a guardian's powers "to those which the court has found necessary to assist the

incapacitated person in providing for personal needs and/or property management." *Id.* ¶ 119

(citing MHL § 81.16(c)(2)). Further, Article 17-A does not expressly require guardians to report

to the court on the person or property of the ward, *id.* ¶ 30, while "Article 81 imposes rigorous

reporting and oversight provisions upon the appointment of a guardian," *id.* ¶ 128.

As demonstrated below, however, these distinctions are not indicative of constitutional

infirmities in Article 17-A. Indeed, the case law establishes that Surrogates exercise their

inherent powers to protect the best interests of alleged incapacitated persons under Article 17-A

by, among other things, holding hearings, appointing counsel, requiring annual reports, and in

some cases denying Article 17-A guardianship petitions when a high-functioning disabled person

would, in the court's judgment, be better served by a more narrowly tailored guardianship under

Article 81. As such, DRNY's allegations are insufficient to sustain its challenge to Article 17-A.

### C.   DRNY's Section 1983, ADA, and Rehabilitation Act Claims

Citing the various distinctions between the two statutes, the Complaint purports to assert five claims against the Defendants:

1.   A substantive due process claim under 42 U.S.C. § 1983 and the due process clauses of the Fifth and Fourteenth Amendments, Compl. ¶¶ 145-153;

2.   A procedural due process claim under 42 U.S.C. § 1983 and the due process clauses of the Fifth and Fourteenth Amendments, *id.* ¶¶ 154-165;

3.   An equal protection claim under 42 U.S.C. § 1983 and the Fourteenth Amendment, *id.* ¶¶ 166-175;

4.   A claim of disability discrimination pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12132 (the "ADA"), Compl. ¶¶ 176-188; and

5.   A claim of disability discrimination pursuant to Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, *id.* ¶¶ 189-203.

Based on the foregoing, DRNY seeks a declaratory judgment that Article 17-A violates the United States Constitution, the ADA, and the Rehabilitation Act. DRNY further seeks an injunction requiring Defendants to "notify all people who are currently subject to guardianship orders pursuant to Article 17A of their right to request modification or termination" of the guardianship, and at the request of such individuals, to "promptly hold a proceeding regarding termination or modification," governed by the rules and procedures prescribed by DRNY. Compl. at 34. DRNY seeks a further injunction barring Defendants "from adjudicating incapacity and appointing" Article 17-A guardians "until [D]efendants ensure that the proceedings provide substantive and procedural rights that do not violate" the Constitution, the

ADA, and the Rehabilitation Act, "and which are not inferior to the substantive and procedural rights enjoyed by allegedly incapacitated persons" under Article 81." *Id.* at 35.

For the reasons that follow, the Complaint should be dismissed in its entirety.

## ARGUMENT

I.     **RULE 12(c) PLEADING STANDARDS**

"Where a Rule 12(c) motion asserts that a court lacks subject matter jurisdiction, the motion is governed by the same standard that applies to a Rule 12(b)(1) motion." *Cruz v. AAA Carting & Rubbish Removal, Inc.*, 116 F. Supp. 3d 232, 239 (S.D.N.Y. 2015) (citing *Xu v. City of New York,* No. 08 Civ. 11339, 2010 WL 3060815, at *2 n.2 (S.D.N.Y. Aug. 3, 2010)). Under that standard, a court must dismiss a claim if it "lacks the statutory or constitutional power to adjudicate it." *Morrison v. Nat'l Austl. Bank Ltd.,* 547 F.3d 167, 170 (2d Cir. 2008), *aff'd*, 561 U.S. 247 (2010). "The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Aurecchione v. Schoolman Transp. Sys., Inc.,* 426 F.3d 635, 638 (2d Cir. 2005).

Similarly, a Rule 12(c) motion challenging the adequacy of the complaint's allegations is governed by the same standard as a motion to dismiss under Rule 12(b)(6). *Milo v. City of New York*, 59 F. Supp. 3d 513, 520 (E.D.N.Y. 2014). The "complaint must contain 'sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"" *Skates v. Inc. Vill. of Freeport*, No. 15 Civ. 1136 (SJF) (AYS), 2016 WL 1459659, at *7 (E.D.N.Y. Jan. 28, 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009)). Thus, for a claim "[t]o withstand a motion for judgment on the pleadings, the 'well-pleaded factual allegations, assumed to be true, [must] plausibly give rise to an entitlement to relief.'" *Milo*, 59 F. Supp. 3d at 520 (quoting *Hayden v. Paterson*, 594 F.3d 513, 161 (E.D.N.Y. 2014)). "[T]hreadbare recitals of the elements

of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (quoting *Harris v. Mills,* 572 F.3d 66, 72 (2d Cir. 2009)).

II.    **PRINCIPLES OF ABSTENTION BAR THIS ACTION**

The *Younger* abstention doctrine requires federal courts to abstain from exercising jurisdiction over DRNY's request for injunctive and declaratory relief in this case. The *Younger* doctrine is rooted in "principles of equity, comity, and federalism," *Gibson v. Berryhill*, 411 U.S. 564, 575 (1973), and respects the States' "important interests in administering certain aspects of their judicial systems," *Pennzoil v. Texaco*, 481 U.S. 1, 12-13 (1987); *see also Juidice v. Vale*, 430 U.S. 327, 334–36 (1977); *Falco v. Justices of Sup. Ct.*, 805 F.3d 425, 427–28 (2d Cir. 2015). As the Second Circuit recently confirmed in *Falco*, *Younger* requires federal courts to abstain where a suit for injunctive or declaratory relief would interfere with "civil proceedings involving certain orders uniquely in furtherance of the state courts' ability to perform their judicial functions." *Id.* at 427 (quoting *Sprint Commc'ns Inc. v. Jacobs*, 134 S. Ct. 584, 592 (2013)).[1]

DRNY's claims fall squarely within the *Younger* doctrine. Under Article 17-A, guardianships are judicial proceedings presided over by state-court judges; accordingly, the entire guardianship process is governed by state judges' orders and judgments. *See* SCPA 17-A. And in this action, DRNY challenges the entire statutory scheme set forth in Article 17-A in an effort to interfere with all prior, ongoing and future Article 17-A proceedings. The guardianship

---

[1] In *Sprint Communications*, the Supreme Court clarified that district courts must abstain from exercising jurisdiction under the *Younger* doctrine only when the circumstances of the case involve: (1) "ongoing state criminal prosecutions," (2) "certain civil enforcement proceedings," or (3) "civil proceedings involving certain orders uniquely in furtherance of the state courts' ability to perform their judicial functions." *Sprint Commc'ns Inc.*, 134 S. Ct. at 592. The circumstances of this case—which directly implicate the way that New York courts manage their own guardianship proceedings under Article 17-A—plainly fall within *Sprint*'s third category. *See Falco*, 805 F.3d at 427–28 (invoking *Younger* abstention where "federal lawsuit implicates the way that New York courts manage their own divorce and custody proceedings" on the grounds that it impacts judicial orders that are "integral to the State court's ability to perform its judicial function in divorce and custody proceedings").

orders at issue plainly "stand[] in aid of the authority of the judicial system, so that its orders and judgments are not rendered nugatory," *Juidice*, 430 U.S. at 336 n.12, and thus "touch[es] on a state court's ability to perform its judicial function," *Sprint Commc'ns*, 134 S. Ct. at 592. DRNY's demand that the federal courts enjoin all judicial orders under Article 17-A and declare the state statute invalid thus directly implicates the way that Surrogate's Courts manage a judicial process that touches on an area of core state interest.2 The *Younger* doctrine bars federal plaintiffs from seeking just such federal intervention in the "internal workings of state courts." *See Kaufman*, 466 F.3d at 86; *see also Falco*, 805 F.3d at 427–28 (abstaining under *Younger* from hearing a challenge to a state statute governing appointment of counsel for children in contested custody cases).

In *Kaufman*, for example, the Second Circuit rejected the plaintiff's request for "an injunction requiring the State of New York to establish a new system for assigning appeals in the Second Department." *Id.* That relief, the court held, so intruded on "'both pending and future'" proceedings that it "would violate principles of comity set forth in *Younger*." *Id.* (quoting *Wallace v. Kern*, 520 F.2d 400, 405 n.9 (2d Cir. 1975)).

The Supreme Court reached the same conclusion in *O'Shea v. Littleton*, 414 U.S. 488 (1974). There, Illinois residents who were not personally involved in ongoing criminal trials moved in federal court for an injunction against state officials and judges to prevent them from engaging in racially discriminatory enforcement of criminal laws. *See id.* at 491, 496. The

---

2 Article 17-A reflects New York State's compelling interest in protecting and "provid[ing] care to its citizens who are unable to care for themselves" because of developmental or intellectual disabilities. *See In re K.L.*, 1 N.Y.3d 362, 370 (N.Y. 2004); *see also Heller v. Doe by Doe*, 509 U.S. 312, 332 (1993) (noting that "the state has a legitimate interest under its *parens patriae* powers in providing care to its citizens who are unable … to care for themselves" (quoting *Addington*, 441 U.S. at 426)); *Hemon v. Office of Pub. Guardian*, 878 F.2d 13, 15 (1st Cir. 1989) (holding that the "long-standing policy of the federal courts to avoid interference in state domestic relations matters … extends to the entire field of domestic relations," including "guardianship matters") .

Supreme Court held that abstention was mandatory because the plaintiffs sought "nothing less than an ongoing federal audit of state criminal proceedings." *Id.* at 500.

Like the injunctions requested in *Kaufman* and *O'Shea*, the injunction sought by DRNY in this case would improperly interfere with state judicial proceedings. DRNY seeks an order "[p]ermanently enjoining defendants from adjudicating incapacity and appointing guardians pursuant to SCPA Article 17-A," and requiring Defendants to: (i) "notify all people who are currently subject to guardianship orders pursuant to Article 17-A of their right to request modification or termination[of] the guardianship order," and upon receiving such a request, "to promptly hold a proceeding regarding termination or modification of the order …." Compl. at 34. This proposed injunction would thus "control or prevent the occurrence of specific events that might take place in the course of future state [Article 17-A proceedings]," *O'Shea*, 414 U.S. at 500, by imposing standards on state-court proceedings that "would require for [their] enforcement the continuous supervision by the federal court over the conduct of" those proceedings, *id.* at 501. Basic principles of federal-state comity forbid such ongoing interference with state judicial proceedings. *See Kaufman*, 466 F.3d at 87.  Accordingly, this Court should abstain from hearing DRNY's challenge to Article 17-A.

The three factors set forth in *Middlesex County Ethics Commission v. Garden State Bar Association*, 457 U.S. 423 (1982) also weigh in favor of invoking *Younger* abstention in this case.[3] First, there is no question that there are ongoing state proceedings: DRNY seeks to enjoin

---

[3] The *Middlesex* factors include whether:

1.  there is an ongoing state proceeding;
2.  an important state interest is implicated; and
3.  the state proceeding provides the federal plaintiff an opportunity for judicial review of the federal constitutional claims.

*Hansel v. Town Court*, 56 F.3d 391, 393 (2d Cir. 1995). The Supreme Court has cautioned that these factors are not dispositive; but are "'additional factors appropriately considered by the federal court before invoking *Younger*.'"

New York courts from adjudicating all ongoing and future guardianship proceedings under Article 17-A. *See* Compl. at 34–35. Second, DRNY's claims implicate the way that New York courts adjudicate guardianship proceedings—a subject in which states have a substantial interest. *See In re K.L.*, 1 N.Y.3d 362, 370 (N.Y. 2004); *Heller v. Doe by Doe*, 509 U.S. 312, 332 (1993).

And third, DRNY has "an adequate opportunity in the state proceedings to raise constitutional challenges." *Middlesex*, 457 U.S. at 432; *see also Spargo v. N.Y. State Comm'n on Judicial Conduct*, 351 F.3d 65, 78 (2d Cir. 2003) ("To avoid abstention, plaintiffs must demonstrate that state law bars the effective consideration of their constitutional claims."). Abstention here would not preclude judicial review of DRNY's constitutional claims because state-court review of Article 17-A proceedings "provides an adequate forum for the vindication of federal constitutional rights." *Cullen v. Fliegner*, 18 F.3d 96, 103 (2d Cir. 1994); *see also Paul v. N.Y. State Dep't of Motor Vehicles*, 2003 WL 253065, at *1 (abstaining under *Younger* doctrine where the plaintiff had the opportunity to raise constitutional claims in state court and the lawsuit implicated important State interests that were "more appropriate[ly] … resolved in the first instance in the State courts, without federal court interference").

Indeed, since Article 17-A came into effect in 1969, the New York courts have regularly resolved both procedural and substantive challenges to Article 17-A in individual proceedings. *See, e.g., In re M.B.,* 6 N.Y.3d 437, 454 (N.Y. 2006) (in clarifying the scope of SCPA 1750-b, the court concluded that the statute "provides substantial protection" to mentally disabled individuals); *In re Guardianship of Chantel Nicole R.,* 34 A.D.3d 99, 103 (1st Dep't 2006) (rejecting argument raised on appeal that Article 17-A "violated the Equal Protection Clause and

---

*Falco*, 805 F.3d at 427 (quoting *Sprint*, 134 S. Ct. at 593); *see also Falco*, 805 F.3d at 427 (noting "it remains unclear how much weight [courts] should afford these 'additional factors' after *Sprint*").

that it was unconstitutionally vague"); *In re Baby Boy W.*, 3 Misc. 3d 656 (Sur. Ct., Broome Cnty. 2004) (holding that the procedures set forth in SCPA §§ 1750 and 1750-b comply with the due process and equal protection requirements of the United States and New York State Constitutions).

Federal plaintiffs must "exhaust all available state appellate remedies" to avoid abstention under *Younger*. *See Kirschner v. Klemons*, 225 F.3d 227, 234 (2d Cir. 2000); *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 608 (1975) ("[A] necessary concomitant of *Younger* is that a party … must exhaust his state appellate remedies before seeking relief in the District Court."); *Paul*, 2003 WL 253065, at *1. Here, the state courts afford individuals an adequate opportunity to challenge guardianships imposed under Article 17-A, yet DRNY has failed to fully pursue its remedies for challenging the constitutionality of Article 17-A in the New York State courts, such as a direct appeal of a guardianship order on constitutional grounds. That course would permit full consideration of DRNY's constitutional arguments, while giving the reviewing state court the benefit of the additional record made when a motion is decided upon full adversarial presentation. DRNY has failed to exhaust its appellate remedies, which presumptively bars its claims in federal court under *Younger*. *Spargo*, 351 F.3d at 78.

Important prudential reasons also favor case-by-case state adjudication, rather than allowing DRNY to pursue this action seeking a blanket federal injunction. Due process in the context of a state's exercise of its *parens patriae* power over those with developmental or mental disabilities plainly occurs on a case-by-case basis, and the Supreme Court has long recognized that facial due-process challenges to a state statute should be avoided in such a fact-intensive context. *See, e.g.*, *Troxel v. Granville*, 530 U.S. 57, 73 (2000) (declining to consider the plaintiffs' facial due-process challenge to a state statute concerning parental visitation because

12

"much state-court adjudication in this context occurs on a case-by-case basis," and the Court would therefore "be hesitant to hold that specific …[state] statutes violate the Due Process Clause as a *per se* matter.").

It would be inappropriate for this Court to consider the constitutional issues raised by DRNY in the abstract, without the benefit of a fully developed factual record in an individual proceeding. The Supreme Court has generally disapproved of DRNY's approach, emphasizing the importance of focusing on concrete "factual situation[s] … for development of a constitutional rule." *New York v. Ferber*, 458 U.S. 747, 768 (1982); *see also Sabri v. United States*, 541 U.S. 600, 608 (2004) ("Although passing on the validity of a law wholesale may be efficient in the abstract, any gain is often offset by losing the lessons taught by the particular, to which common law method normally looks."). When courts face "flesh-and-blood" legal problems, as state courts already do in adjudicating individual Article 17-A proceedings, they are more likely to make "informed judgment[s]" and accurately weigh the competing interests at stake. *Ferber*, 458 U.S. at 768 (quotation marks omitted).

The primacy of state-court review is not weakened simply because DRNY might characterize its claims as purely legal ones alleging fundamental constitutional error. Every significant Supreme Court case on the issues raised by DRNY here was an appeal from an individual case, typically adjudicated in the state courts. *See Lawrence v. Texas*, 539 U.S. 558 (2003); *Cruzan by Cruzan v. Dir., Missouri Dep't of Health*, 497 U.S. 261 (1990); *Addington v. Texas*, 441 U.S. 418 (1979); *Jackson v. Indiana*, 406 U.S. 715 (1972); *Meyer v. Nebraska*, 262 U.S. 390 (1923).

DRNY's improper attempt to raise these claims in federal court, without first seeking relief in state court, violates federalism and comity principles. *See Thomas v. City of New York*,

814 F. Supp. 1139, 1150 (E.D.N.Y. 1993) ("notions of comity and federalism compel the assumption that the [state] [c]ourt is competent to hear and thoughtfully consider the plaintiff's constitutional challenges.").

In sum, the relief DRNY seeks—a statewide injunction prohibiting guardianship proceedings under Article 17-A and an order declaring the statute wholly unconstitutional—would directly interfere with ongoing and future state-court proceedings. Because this type of federal interference with state-court proceedings is barred by the *Younger* abstention doctrine, the Court should abstain from hearing DRNY's claims.

## III.   SOVEREIGN IMMUNITY BARS DRNY'S SECTION 1983 CLAIMS AGAINST NEW YORK STATE AND THE UNIFIED COURT SYSTEM

The doctrine of sovereign immunity mandates the dismissal, for lack of subject matter jurisdiction, of DRNY's Section 1983 claims against the State and the UCS alleging due process and equal protection violations. Fed. R. Civ. P. 12(b)(1) & (h)(3).[4]

The Eleventh Amendment, as interpreted by the Supreme Court, "means that 'as a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity,' or unless Congress has 'abrogate[d] the states' Eleventh Amendment immunity when acting pursuant to its authority under Section 5 of the Fourteenth Amendment.'" *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009) (quoting *Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ.,* 466 F.3d 232, 235 (2d Cir. 2006)). "It is axiomatic that the State has not agreed to waive, nor has Congress intended to override, the State's immunity from

---

[4] Judges DiFiore and Marks are sued in their official capacities. While the doctrine in *Ex Parte Young*, 209 U.S. 123 (1908), authorizes official-capacity claims against state employees seeking "prospective injunctive relief to prevent a continuing violation of federal law," to the extent DRNY seeks any other type of relief, such as retrospective relief or otherwise, such claims are barred.  *See Jude v. New York*, No. 07 Civ. 5890 (RJS), 2009 WL 928134, at *4 (S.D.N.Y. Mar. 30, 2009) (citations omitted).

being sued in federal court based on Section 1983." *Wallace v. New York*, 40 F. Supp. 3d 278, 304 (E.D.N.Y. 2014) (citing *Quern v. Jordan*, 440 U.S. 332, 341 (1979) and *Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 39 (2d Cir. 1977)).

Sovereign immunity protects the states and state agencies from suit in federal court "regardless of the relief sought." *McCluskey v. N.Y. State Unified Court Sys.*, 442 F. App'x 586, 588 (2d Cir. 2011) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984)). It is well settled that "'[t]he immunity recognized by the Eleventh Amendment extends beyond the states themselves to state agents and state instrumentalities that are, effectively, arms of a state.'" *Gollomp*, 568 F.3d at 366 (quoting *Woods*, 466 F.3d at 236). In particular, the Second Circuit has repeatedly held that "[t]he Unified Court System is specifically authorized by the Constitution of the State of New York, performs a traditional function of state government, and is 'funded principally through State funds.'" *Gollomp*, 568 F.3d at 367-68 (citations omitted). Accordingly, the UCS "is unquestionably an 'arm of the State,' *Woods*, 466 F.3d at 236, and is entitled to Eleventh Amendment sovereign immunity." *Id.*  Thus, DRNY's Section 1983 claims against the State and the UCS should be dismissed for lack of subject matter jurisdiction. *See Morales v. State of N.Y.*, 22 F. Supp. 3d 256, 268 (S.D.N.Y. 2014).

Moreover, "it is axiomatic that a state is not a proper defendant in an action brought pursuant to Section 1983." *Restivo v. Hessemann*, 846 F.3d 547, 583 (2d Cir. 2017) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)) (holding that a state is not a "person" for purposes of a Section 1983 claim). The same rule applies to an arm of the state, such as the UCS. *See Brown v. N.Y. State Unified Court Sys.*, 261 F. App'x 307, 307-08 (2d Cir. 2008) (affirming the district court's holding that the complaint "failed to state a claim for relief because the named defendants-the New York State Unified Court System and the Office of Court Administration-

15

are not 'persons' within the meaning of 42 U.S.C. § 1983") (citing *Will,* 491 U.S. at 71;

*Zuckerman v. Appellate Div., Second Dep't, Sup. Ct. of N.Y.,* 421 F.2d 625, 626 & n.1 (2d

Cir.1970)). Thus, DRNY's Section 1983 claims against the State and UCS should be dismissed

for failure to state a claim as well as on jurisdictional grounds based upon the Eleventh

Amendment and established principles of sovereign immunity. Fed. R. Civ. P. 12(b)(1) & (6).

## IV.   THE COMPLAINT FAILS TO STATE A CLAIM UNDER THE EQUAL PROTECTION CLAUSE, THE ADA, OR THE REHABILITATION ACT

For several reasons, the Complaint's Section 1983 claim alleging a violation of equal

protection, as well as its ADA and Rehabilitation Act claims, are subject to dismissal on the

merits. Fed. R. Civ. P. 12(b)(6) & 12(c).[5]

### A.   DRNY Fails to Allege a Violation of the Equal Protection Clause

The Complaint's Third Claim, brought under 42 U.S.C. § 1983, asserts a violation of the

Fourteenth Amendment's Equal Protection Clause. *See generally* Compl. ¶¶ 166-175. DRNY

alleges that persons with developmental and intellectual disabilities who are subject to

guardianship proceedings under Article 17A are denied equal protection compared with other

individuals who are subject to guardianship proceedings under Article 81. *Id.* ¶¶ 167 & 175.

DRNY's equal protection claim is subject to dismissal.

It is well settled that individuals with disabilities, including intellectual disabilities, do not

constitute a "a 'protected class' for purposes of equal protection analysis." *Suffolk Parents of*

*Handicapped Adults v. Wingate*, 101 F. 3d 818, 824 n.4 (2d Cir. 1996) (citing *City of Cleburne v.*

*Cleburne Living Ctr.,* 473 U.S. 432, 442-46 (1985)). *Accord Chick v. Cnty. of Suffolk*, No. 11

Civ. 2855 (LDW) (WDW), 2013 WL 685661, at *3 (E.D.N.Y. Feb. 22, 2013), *aff'd*, 546 F.

---

[5] In addition, DRNY's due process claims are subject to dismissal to the extent that they are based on the Fifth Amendment, which "only applies to actions by the Federal Government." *Viteritti v. Inc. Vill. of Bayville*, 831 F. Supp. 2d 583, 592 (E.D.N.Y. 2011) (citations omitted).

App'x 58 (2d Cir. 2013) (citing *O'Leary v. Town of Huntington,* No. 11 Civ. 3754 (JFB) (GRB),

2012 WL 3842567, at *13 n.10 (E.D.N.Y. Sept. 5, 2012)).

Accordingly, DRNY's equal protection challenge to Article 17-A is subject to review

under the lenient "rational basis" standard.6 *See id.* (citing *Quill v. Vacco*, 80 F.3d 716, 725-27

(2d Cir. 1996); *Catlin v. Sobol,* 93 F.3d 1112, 1120 (2d Cir. 1996)). Under that standard, a statute

withstands scrutiny so long as it bears a "rational relationship to a legitimate governmental

objective." *Windsor v. United States*, 699 F.3d 169, 180 (2d Cir. 2012) (citing *Thomas v.

Sullivan*, 922 F.2d 132, 136 (2d Cir. 1990)), *aff'd*, 133 S. Ct. 2675 (2013). Moreover, a plaintiff

bringing an equal protection challenge subject to rational basis review "would need to show that

there is no '*reasonably conceivable* state of facts that could provide a rational basis for the

classification.'" *Vandermark v. City of New York*, 391 F. App'x 957, 959 (2d Cir. 2010) (quoting

*Yuen Jin v. Mukasey,* 538 F.3d 143, 158 (2d Cir. 2008) (emphasis in original)).

DRNY cannot meet this burden because, as Courts have repeatedly held, Article 17-A

does not violate the Equal Protection Clause. *See Cullen*, 18 F.3d at 103 (holding that Article

17-A "provides an adequate forum for the vindication of federal constitutional rights"); *In re

M.B.,* 6 N.Y.3d at 454 (holding that SCPA 1750-b "provides substantial protection" to mentally

disabled individuals); *In re Baby Boy W.*, 3 Misc. 3d 656 (holding that SCPA §§ 1750 and 1750-

b comply with equal protection and due process).

Moreover, it is well established that "the state has a legitimate interest under its *parens

patriae* powers in providing care to its citizens who are unable … to care for themselves"

---

6 DRNY's assertion that Article 17-A is unsupported by a "compelling or legitimate governmental interest," *see*
Compl. ¶ 175, conflates two distinct legal standards. Government classifications based on protected categories such
as race are subject to strict scrutiny, and "are constitutional only if they are narrowly tailored measures that further
compelling governmental interests." *Windsor v. United States*, 699 F.3d 169, 180 (2d Cir. 2012) (citation omitted),
*aff'd*, 133 S. Ct. 2675 (2013). By contrast, rational basis review requires only a "rational relationship to a legitimate
governmental objective." *Id.* (citing *Thomas v. Sullivan*, 922 F.2d 132, 136 (2d Cir. 1990)).

because of intellectual and developmental disabilities. *Heller v. Doe by Doe*, 509 U.S. 312, 332 (1993). *See also Matter of K.L.*, 1 N.Y.3d 362, 370, 774 N.Y.S.2d 472 (2004) (citing *Rivers v. Katz*, 67 N.Y.2d 485, 495-96, 504 N.Y.S.2d 74 (1986)). Although DRNY challenges the use of Article 17-A to meet the needs of such disabled individuals, the State has, at a minimum, a rational basis for maintaining Article 17-A as a more efficient and less costly alternative to Article 81. As noted above, the two statutes generally serve different needs and populations. "[T]he Article 17-A proceeding is most often used to ensure long-term guardianship of the child who never was and never will be able to care for herself. It permits her parents to serve as her legal guardians …." Turano, Practice Commentary, N.Y. Sur. Ct. Proc. Act Law § 1750.

Unlike Article 81, which was adopted "to address the decisionmaking needs of disabled older adults," *Matter of Lavecchia*, 170 Misc. 2d at 213, 650 N.Y.S.2d at 957, Article 17-A remains a rational and indeed, preferable "guardianship device, based upon principles of *in loco parentis*, primarily securing for relatives the legal right to make health care decisions for a mentally disabled child or adult." *Matter of Cruz*, Index No. 500001/01, 2001 WL 940206, at *4 (N.Y. Sup. Ct. July 16, 2001) (citation omitted). Among its benefits, Article 17-A guardianship proceedings "are thought to be faster than article 81 [proceedings]; petitioners are often pro se, and the combination of simplified forms, service requirements, and assistance by the clerks in Surrogate's Courts mean that a lawyer is not necessary, an important factor for petitioners … for whom such an expense is daunting, if not prohibitive." *Matter of Chaim A.K.*, 26 Misc. 3d 837, 841, 885 N.Y.S.2d 582, 585 (Sur. Ct. N.Y. Cnty. 2009);[7] *see also In re Guardianship of Mueller*,

---

[7] In *Matter of Chaim A.K.*, the Surrogate's Court criticized Article 17-A and ultimately denied the petition without prejudice to the petitioner seeking guardianship under Article 81. Neither the Court's criticism nor its holding suggests that Article 17-A was wholly irrational. Moreover, the fact that after a thorough individualized review, Surrogate's Courts sometimes deny Article 17-A petitions or impose conditions on such guardianships underscores that Article 17-A is not susceptible to a facial challenge. *See* Part V, *infra*.

25 Misc. 3d 165, 166, 887 N.Y.S.2d 768, 769 (Sur. Ct. Dutchess Cnty. 2009) (observing that the parents of a developmentally disabled child "indicated that the primary reasons for proceeding in Surrogate's Court are to save on attorney fees and Article 81 court examiner fees, as both have reduced their son's funds over the past decade").

In sum, DRNY cannot plausibly claim that Article 17-A lacks any conceivable rational basis. DRNY's equal protection theory also fails because the Complaint does not identify a class of persons who are purportedly disadvantaged because of their alleged disability. To the contrary, the Complaint expressly alleges that both Article 17-A and Article 81 apply to persons with developmental and intellectual disabilities. *See* Compl. ¶ 167.

*Suffolk Parents* demonstrates why, in these circumstances, there can be no equal protection claim. *See* 101 F. 3d at 824–27. That case challenged the elimination of county and state funding for the treatment, at out-of-state facilities, of severely disabled adults who had originally been assigned to those facilities as children because there were no appropriate treatment centers in New York State. *Id.* at 819–27. The plaintiffs – four of the disabled adults' guardians and an advocacy group – alleged a violation of equal protection because other disabled adults at in-state facilities were still receiving county and state funding for their care. *Id.* The Second Circuit rejected the equal protection claim and reversed the district court's grant of a preliminary injunction in favor of the plaintiffs. *Id.* at 824–27. The Court explained that there was no equal protection claim based on the plaintiffs' disabilities because "this case involves different treatment between two groups of similarly disabled individuals, not a differentiation between people with – and people without – disabilities." *Id.* at 824 n.4. The Second Circuit concluded that "[a] disparity results from [the State's policies], but an equal protection violation does not." *Id.* at 827. Applying the holding and reasoning of *Suffolk Parents*, DRNY cannot

allege an equal protection claim on behalf of developmentally and intellectually disabled individuals *vis-à-vis* others in the same class.

Finally, DRNY's equal protection claim fails on the separate and independent basis that the Complaint fails to allege intentional discrimination against individuals with intellectual and developmental disabilities. *See Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir. 1995) ("To prove an equal protection violation, claimants must prove purposeful discrimination directed at an identifiable or suspect class.") (citations omitted).

Thus, DRNY's Section 1983 claim alleging an equal protection violation is subject to dismissal.

### B.    The Complaint Fails to Allege Violations of the ADA and Rehabilitation Act

DRNY's claims under the ADA and Rehabilitation Act should be dismissed for failure to allege discrimination against any person on the basis of a disability.

"Title II of the ADA 'proscribes discrimination against the disabled in access to public services.'" *Harris*, 572 F.3d at 73 (quoting *Powell v. Nat'l Bd. of Med. Exam'rs,* 364 F.3d 79, 84-85, *corrected,* 511 F.3d 238 (2d Cir. 2004)). In relevant part, the statute "provides that 'no qualified individual with a disability shall, ***by reason of such disability***, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.'" *Id.* (quoting 42 U.S.C. § 12132) (emphasis added). Similarly, Section 504 of the Rehabilitation Act states that "[n]o otherwise qualified individual with a disability … shall, ***solely by reason of her or his disability***, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under" any covered program or activity. 29 U.S.C. § 794(a) (emphasis added).

20

"To establish a violation under Section 504 or Title II, a plaintiff must demonstrate that (1) he is a qualified individual with a disability; (2) the defendant is subject to one of the Acts; and (3) he was denied the opportunity to participate in or benefit from the defendant's services, programs, or activities, or was otherwise discriminated against by the defendant because of his disability." *Disabled in Action v. Bd. of Elections in City of N.Y.*, 752 F.3d 189, 196-97 (2d Cir. 2014) (citation omitted). *See also Marino v. City Univ. of N.Y.*, 18 F. Supp. 3d 320, 342 (E.D.N.Y. 2014) (plaintiff must allege discrimination "***by reason of her disabilities***.") (emphasis added) (citing *Henrietta D. v. Bloomberg,* 331 F.3d 261, 272 (2d Cir. 2003)). *See also Davis v. Shah*, 821 F.3d 231, 259 (2d Cir. 2016) (plaintiff must show that discrimination was "due to her disability") (quoting *Fulton v. Goord,* 591 F.3d 37, 43 (2d Cir. 2009)).

On its face, the Complaint fails to identify a single "qualified individual with a disability," and fails to allege that Defendants discriminated against any such person "because of" a disability. *See Disabled in Action*, 752 F.3d at 196-97. To the contrary, the Complaint makes clear that individuals with intellectual or developmental disabilities are subject to guardianship proceedings either in Supreme Court under Article 81 of the Mental Hygiene Law, or in Surrogate's Court under Article 17-A of the Surrogate's Court Procedure Act. *See, e.g.*, Compl. ¶ 183 ("The petitioner seeking the guardianship elects the forum."). As such, there is no denial by the Defendants of an alleged incapacitated person's purported right to a guardianship proceeding governed by Article 81.

Moreover, DRNY's claim misconstrues the nature of a discrimination claim under the ADA and comparable statutes. These statutes prohibit discrimination against members of a protected group compared with non-members of the group. Conversely, several cases in the Second Circuit have rejected claims of discrimination where the plaintiff claimed she was treated

21

unfavorably compared to other members of the same protected class. As one court held in

rejecting a claim of disability discrimination:

> Although plaintiff purports to assert a "disability discrimination" claim,
> the comparators she relies upon to demonstrate disparate
> treatment suffered from the same disability that afflicts her. Plaintiff fails to
> explain how, in light of this fact, she can demonstrate …
> discriminatory animus toward disabled individuals.

*Doe v. City of New York*, No. 05-CV-5439 (RRM) (SMG), 2009 WL 7295358, at *11 (E.D.N.Y.

Nov. 10, 2009) (Report and Recommendation), *adopted by* 2011 WL 37131 (E.D.N.Y. Jan. 5,

2011), *aff'd,* 473 F. App'x 24 (2d Cir. 2012). *See also Moore v. Kingsbrook Jewish Med. Ctr.*,

No. 11 Civ. 3625, 2013 WL 3968748, at *10 (E.D.N.Y. July 30, 2013) ("[The] [p]laintiff's

argument that his termination was a result of racial or national origin animus would be

discredited because his alleged comparators ... are of the same race and national origin as [the]

[p]laintiff and neither was terminated."); *Henny v. New York*, 842 F.Supp.2d 530, 555 n.24

(S.D.N.Y. 2012) (holding that the existence of other African-American employees who were not

terminated "undermine[d] any inference that [the] [d]efendants [fired the plaintiff] *based on*

*discriminatory animus* against African-Americans"); *Adeniji v. Admin. for Children Servs.*, 43

F. Supp. 2d 407, 426 n.7 (S.D.N.Y. 1999), *aff'd*, 201 F.3d 430 (2d Cir. 1999); *Harmon v.*

*Runyon*, No. 96 Civ. 6080, 1997 WL 786383, at *5 (S.D.N.Y. Dec. 19, 1997).

   Consistent with these holdings, the central purpose of the ADA and the

Rehabilitation Act (on which the ADA was modeled) is to assure that disabled individuals

receive "evenhanded treatment" in relation to non-disabled individuals. *Traynor v. Turnage,* 485

U.S. 535, 548 (1988). In its Complaint, DRNY does not allege that it (or any individual DRNY

claims to represent) is treated differently from non-disabled persons. DRNY instead compares

individuals involved in 17-A proceedings to individuals involved in guardianship proceedings

under Article 81 who have similar intellectual or developmental disabilities. The ADA and the Rehabilitation Act were not designed to address differences in treatment within a group of disabled individuals, but rather were designed to afford even-handed treatment to disabled individuals *vis-a-vis* non-disabled persons. *See Traynor*, 485 U.S. at 548. DRNY is attempting to use these statutes for a different purpose, which was not intended by Congress or contemplated by the courts. Plaintiff seeks to invalidate Article 17-A on the basis that it does not treat disabled individuals in precisely the same way that Article 81 treats similarly disabled individuals. DRNY's failure to allege any differential treatment between disabled individuals and non-disabled individuals is fatal to its ADA and Rehabilitation Act claims, which thus fail as a matter of law.

In sum, DRNY's ADA and Rehabilitation Act claims are subject to dismissal because they do not allege that Defendants discriminate against individuals with intellectual or developmental disabilities compared to individuals who are not members of the same class. Their theory – that some individuals with intellectual and developmental disabilities are treated differently from others in the same class – fails as a matter of law.

## V.    DRNY CANNOT PREVAIL ON ITS FACIAL CHALLENGE TO SURROGATE'S COURT PROCEDURE ACT ARTICLE 17-A

The Complaint raises a facial challenge to Article 17-A, alleging that the statute is invalid *per se*. The Complaint is subject to dismissal as a matter of law because it does not plausibly allege, and DRNY cannot show, that all guardianship proceedings under Article 17-A are invariably unlawful.

"A facial challenge is an attack on a statute itself as opposed to a particular application." *City of Los Angeles v. Patel*, 135 S. Ct. 2443, 2449 (2015). "A facial challenge to a legislative Act is … the most difficult challenge to mount successfully, since the challenger must establish

that no set of circumstances exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987). *See also United States v. Decastro*, 682 F.3d 160, 163 (2d Cir. 2012) (citing *Diaz v. Paterson*, 547 F.3d 88, 101 (2d Cir. 2008)).

For several reasons, facial challenges "are generally disfavored." *Dickerson v. Napolitano*, 604 F.3d 732, 741 (2d Cir. 2010). First, discouraging these challenges "'serves institutional interests by ensuring that the issues before the court are concrete and sharply presented.'" *Id.* (quoting *Thibodeau v. Portuondo,* 486 F.3d 61, 71 (2d Cir. 2007)). Second, "'[c]laims of facial invalidity often rest on speculation.'" *Id.* (quoting *Wash. State Grange v. Wash. State Republican Party,* 552 U.S. at 442, 450 (2008)). Third, facial challenges "run contrary to the fundamental principle of judicial restraint that courts should neither anticipate a question of constitutional law in advance of the necessity of deciding it nor formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied." *Id.* Fourth, "facial challenges threaten to short circuit the democratic process by preventing laws embodying the will of the people from being implemented in a manner consistent with the Constitution." *Id.* at 741-42 (quoting *Wash. State Grange*, 552 U.S. at 451).

This case illustrates precisely why facial challenges are disfavored. The Complaint sets forth a litany of supposed flaws in Article 17-A, without acknowledging that New York's Surrogate's Courts, when presiding over actual guardianship proceedings, regularly take steps to ensure fairness and avoid the purported constitutional issues identified in the Complaint.

For example, DRNY alleges that hearings are not required in all Article 17-A guardianship proceedings, and that when a hearing is held, the alleged incapacitated person is not always required to attend. But Article 17-A presumptively requires a hearing, while permitting judges in their discretion to "dispense" with the hearing or the person's attendance in particular

24

cases. SCPA § 1754. DRNY cannot plausibly claim that a hearing is constitutionally required in all cases – e.g., where guardianship is sought by relatives who care for a severely impaired person who indisputably cannot understand or contribute to the court's determination and who may be distressed by the proceedings. *See, e.g., Matter of CK*, 11 Misc. 3d 1087(A), 819 N.Y.S.2d 847 (Sur. Ct. Albany Cnty. 2006) (dispensing with presence of alleged incapacitated person, a "fifty year old woman suffering from Down's Syndrome with severe mental retardation, complicated by progressive dementia"). *See also Matter of Kevin Z.*, 105 A.D.3d 1269, 1270, 966 N.Y.S.2d 226, 228 (3d Dep't 2013) ("As there is no dispute with respect to Kevin's disabilities, Surrogate's Court was authorized to appoint a guardian of Kevin's person and/or property if such appointment is in his best interests (*see* SCPA 1750, 1750–a [1]; 1754[5])). Moreover, the case law reflects that hearings are held in Article 17-A proceedings. *See, e.g., Matter of Zachary W.*, Index No. 2015-2442, NYLJ 1202784677568, at *1 (Sur. Ct. Suff. Cnty. Mar. 30, 2017); *In re Stevens*, 17 Misc. 3d 1121(A), 851 N.Y.S.2d 66 (Sur. Ct. N.Y. Cnty. 2007). Thus, DRNY cannot establish that the purported requirement of a hearing is denied in all cases, as it must to state a facial challenge.

Similarly, DRNY cannot plausibly allege that the alleged incapacitated person must be represented by an attorney in all circumstances. *See, e.g., In re Mark C.H.*, 28 Misc. 3d 765, 776, 906 N.Y.S.2d 419, 427 (Sur. Ct. N.Y. Cnty. 2010) (citing *Matter of St Luke's–Roosevelt Hosp. Ctr. (Marie H.)*, 89 N.Y.2d 889, 653 N.Y.S.2d 257 (1996) (holding that indigent alleged incapacitated person has the right to counsel where involuntary transfer to a nursing home is requested)). Moreover, Surrogates exercise their inherent authority to appoint counsel in particular cases brought under Article 17-A. For example, in two recent cases, the Kings County Surrogate appointed attorneys, at public expense, to represent indigent persons over whom

guardianship was sought. *See Matter of Leon*, 53 Misc. 3d 1204(A), 43 N.Y.S.3d 769 (Sur. Ct.

Kings Cnty. Oct. 3, 2016); *Matter of Zhuo*, 53 Misc. 3d 1121, 42 N.Y.S.3d 530 (Sur. Ct. Kings

Cnty. Sept. 30, 2016). Thus, DRNY cannot show that there is "no set of circumstances" in which

the purported requirement of counsel is satisfied.

As noted above, DRNY also challenges the scope of guardians' "plenary" authority under

Article 17-A, contrasting it with the requirement that Article 81 guardianships be tailored to the

ward's functional limitations. Belying DRNY's contention, several Surrogates have determined

that under the federal and state constitutions, an Article 17-A guardianship should be granted

only if it is the "least restrictive alternative to achieve the state's goal of protecting a person with

intellectual disabilities from harm connected to those disabilities." *Matter of Dameris L.*, 38

Misc. 3d 570, 579, 956 N.Y.S.2d 848 (Sur. Ct. N.Y. Cnty. 2012); *Matter of Michelle M.*, 52

Misc. 3d 1211(A) (Sur. Ct. Kings Cnty. 2016) (construing Article 17-A as requiring that less

restrictive alternatives be "explored and exhausted" before imposing guardianship); *Matter of*

*Zachary W.*, NYLJ 1202784677568, at *6. When courts have found that a plenary guardianship

is unnecessary, they have dismissed Article 17-A petitions without prejudice to the petitioner

commencing an Article 81 proceeding seeking a more narrowly tailored guardianship.[8] *See, e.g.,*

*Matter of Zachary W.*, NYLJ 1202784677568, at *6; *see also Matter of Caitlin*, NYLJ

1202784243973, at * 1 (Sur. Ct. Kings Cnty. Mar. 16, 2017) (dismissing the Article 17-A

proceeding on the grounds that a plenary guardianship was not warranted in light of the facts

before the court, and noting that "less restrictive alternatives to a guardianship are available, such

as a durable power-of-attorney, health care proxy, advance directives, and community supportive

---

[8] The ability of the New York State Surrogate's Courts to determine the requirements of due process in each case, and to apply Article 17-A to comport with those requirements, further reinforces the appropriateness of the federal courts abstaining from this action. *See* Part II, *supra*.

services"). Thus, DRNY cannot prove that plenary guardianships are unconstitutional in all cases, or that the Surrogate's Courts invariably apply Article 17-A in an unconstitutional manner.

Similarly, courts have imposed reporting requirements on Article 17-A guardians, notwithstanding DRNY's allegation that the statute does not require such reporting. In fact, the Surrogate's Court in New York County now requires guardians to complete and submit a questionnaire each year for review by the Court concerning the ward's well-being. *See In re Mark C.H.*, 28 Misc. 3d at 787, 906 N.Y.S.2d at 435, n.52.[9] For example, one case imposed reporting requirements on the father as a condition of his appointment as his daughter's guardian. *Matter of Yvette A.*, 27 Misc. 3d 945, 898 N.Y.S.2d 420 (Sur. Ct. N.Y. Cnty. 2010). As the court explained, "Although, Article 17-A does not specifically provide for the tailoring of a guardian's powers or for reporting requirements similar to Article 81, the court's authority to impose terms and restrictions that best meet the needs of the ward is implicit in the provisions of § 1758 of the SCPA, under which 'the court shall have and retain general jurisdiction over the mentally retarded ... person for whom such guardian shall have been appointed, to take of its own motion or to entertain and adjudicate such steps and proceedings relating to such guardian, ... as may be deemed necessary or proper for the welfare of such mentally retarded ... person.'" *Id.* at 950, 898 N.Y.S.2d at 424. These cases are fatal to DRNY's facial challenge, which presupposes that Article 17-A is never constitutionally applied. Accordingly, the facial challenge to the statute should be dismissed.

---

[9] The annual reports are modeled after those prescribed in New York Mental Hygiene Law § 81.31, and require information such as any major changes in the ward's physical or mental condition, and a resume of all activities undertaken by the guardian on behalf of the incapacitated person. This new judicially crafted requirement applies to "guardians of the person." Guardians of the property are expressly required by statute to submit annual financial reports.  SCPA §§ 1719 & 1761.

VI.   **CHIEF JUDGE DiFIORE AND CHIEF ADMINISTRATIVE JUDGE MARKS ARE ENTITLED TO QUALIFIED IMMUNITY**[10]

Public officials are entitled to qualified immunity if their actions do not "violate clearly established statutory or constitutional rights of which a reasonable person would have known" or "if it was 'objectively reasonable' for [the public officials] to believe that [their] actions were lawful at the time of the challenged act." *Field Day, LLC v. Cnty. of Suffolk*, 463 F.3d 167, 191–92 (2d Cir. 2006) (quoting *McClellan v. Smith*, 439 F.3d 137, 147 (2d Cir. 2006)). DRNY argues that Article 17-A is facially unconstitutional and that Judges DiFiore and Marks have essentially overseen UCS while the "Surrogate's Courts have taken, and continue to take, actions which plaintiff complains of in this lawsuit." Compl. ¶¶ 22, 24–28.

But as the Second Circuit has long recognized, "state officials … are entitled to rely on a presumptively valid state statute … until and unless [the statute is] declared unconstitutional" because "'[t]he enactment of a law forecloses speculation by enforcement officers concerning [the law's] constitutionality.'" *Vives v. City of New York*, 405 F.3d 115, 118–19 (2d Cir. 2005) (quoting *Connecticut ex rel. Blumenthal v. Crotty*, 346 F.3d 84, 102–03 (2d Cir. 2003)). The one "possible exception" to this standard is when a law is "so grossly and flagrantly unconstitutional that any person of reasonable prudence would be bound to see its flaws." *Id.*

Here, DRNY's allegations do not fall within this narrow exception. Nothing in the Complaint suggests that Article 17-A is "so grossly and flagrantly unconstitutional" that any reasonable person in Judges DiFiore's or Marks's position would have concluded "'a declaration

---

[10] Because Judges DiFiore and Marks are entitled to qualified immunity, this Court need not reach the constitutional questions raised in this litigation. *See Vives v. City of New York*, 405 F.3d 115, 118 (finding that the defendants were entitled to qualified immunity, the court declined to reach the question of whether the challenged state statute "survives constitutional scrutiny"); *see also Ehrlich v. Town of Glastonbury*, 348 F.3d 48, 57 (2d Cir. 2003) ("[W]e may [in certain circumstances] move directly to [the question of qualified immunity] and refrain from determining whether a constitutional right has been violated"); *Anobile v. Pelligrino*, 303 F.3d 107, 123 (2d Cir. 2001) ("Principles of judicial restraint caution us to avoid reaching constitutional questions when they are unnecessary to the disposition of a case.").

of [its] unconstitutionality was inevitable.'" *Id.*; *see also Field Day, LLC v. Cnty. of Suffolk*, 463 F.3d 167, 191–92 (2d. Cir. 2006) (noting that a statute is presumed to be constitutional in the qualified immunity context when it is being facially challenged). Indeed, since its enactment in 1969, no aspect of Article 17-A has been declared facially unconstitutional by a state or federal appellate court.

Consequently, Judges DiFiore and Marks are entitled to rely on Article 17-A as presumptively valid, and are thus shielded by qualified immunity. *See Vives*, 405 F.3d at 118–19 (holding that the defendants were entitled to qualified immunity because the state statute being facially challenged was presumed to be constitutional); *accord King v. Cuomo,* 465 F. App'x 42, 45 (2d Cir. 2012) (affirming dismissal of challenge to state statute on qualified immunity grounds because the defendants properly "'rel[ied] on a presumptively valid state statute" that is not 'grossly and flagrantly unconstitutional'" (quoting *Vives*, 405F.3d at 117)); *Sinclair v. Goord*, 2009 WL 9056089 (S.D.N.Y. Mar. 10, 2009) (dismissing the lawsuit on qualified immunity grounds because "[j]udicial interpretation" of the challenged law "would not have led a reasonable person to doubt the constitutionality of the statute.).

**CONCLUSION**

For the foregoing reasons, the Court should dismiss the Complaint with prejudice for lack of subject matter jurisdiction, on grounds of abstention, and for failure to state a claim on which relief can be granted, and should award such other and further relief as it deems proper.

Dated: New York, New York            ERIC T. SCHNEIDERMAN
       June 22, 2017                    Attorney General of the State of New York


                           By: _____/s/_____
                                Michael A. Berg
                                Jonathan D. Conley
                                Assistant Attorneys General
                                120 Broadway, 24th floor
                                New York, New York 10271
                                Tel.: (212) 416-8651/8108
                                Fax: (212) 416-6009
                                michael.berg@ag.ny.gov
                                jonathan.conley@ag.ny.gov
                                *Attorneys for Defendants*